STATE of Minnesota, Respondent,

v.

Justin Allen KILMER, Appellant.

No. A06–2052.

Court of Appeals of Minnesota.

Nov. 20, 2007.

Lori Swanson, Attorney General, St. Paul, MN; and Ronald I. Galstad, Galstad, Jensen & McCann, P.A., East Grand Forks, MN, for respondent.

Thomas V. Omdahl, Omdahl Law Office, Grand Forks, ND, for appellant.

Considered and decided by WRIGHT, Presiding Judge; SHUMAKER, Judge; and STONEBURNER, Judge.

## OPINION

SHUMAKER, Judge.

Justin Allen Kilmer appeals from a DWI conviction, arguing that because the arresting officer's only reason for stopping him was that he entered an intersection while the controlling traffic light was yellow, that officer lacked articulable suspicion of criminal activity justifying the stop. The district court held that Minnesota law prohibits drivers from entering an intersection when a traffic light is yellow, and on this basis found the officer's stop was legal. Because we conclude that the district court erred in its reading of the applicable statute, we reverse.

## FACTS

In reviewing appellant Justin Allen Kilmer's convictions of driving while impaired and test refusal after a *Lothenbach* trial, we are asked to determine whether entering an intersection on a yellow traffic signal provides a proper legal basis for a police officer to stop a motor vehicle.

The undisputed dispositive facts show that, at 2:12 a.m. on March 18, 2006, a police officer was parked at an intersection controlled by traffic semaphores in East Grand Forks. The officer watched Kilmer's car enter the intersection while the traffic light for his direction of travel was displaying a steady yellow.

The officer stopped Kilmer and noticed that he smelled strongly of alcohol. After Kilmer failed several field-sobriety tests and a preliminary breath test, the officer arrested him for driving while impaired and charged him with that offense. When Kilmer refused to submit to further testing, he was charged with that offense as well.

The district court rejected Kilmer's challenge of the legality of the stop, concluding that the officer "had probable cause to detain [Kilmer] because [Kilmer] had committed a traffic violation." Relying on a traffic statute and a state supreme court case, the court ruled that Kilmer "could not have entered the intersection lawfully if evidence indicates that he entered the intersection under the yellow warning light."

Kilmer contends that the court's conclusion of law is erroneous because it is not illegal to enter an intersection on a yellow warning light.

## ISSUE

Did the district court err by ruling that a police officer had a legally sufficient basis for stopping appellant's motor vehicle when the sole driving conduct the officer observed was appellant's entry into an intersection controlled by traffic semaphores while the signal for appellant's direction of travel was a steady yellow?

## ANALYSIS

A law-enforcement officer is permitted to conduct a limited investigatory stop of a motor vehicle if the officer has an objectively reasonable and articulable basis for suspecting the motorist of criminal activity. *Berge v. Comm'r of Pub. Safety,* 374 N.W.2d 730, 732 (Minn.1985) (citing *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981)). Even an insignificant violation of a traffic law can suffice to provide a basis for a legal stop. *State v. George,* 557 N.W.2d 575, 578 (Minn.1997).

When a stop is premised on an ostensible violation of a traffic law, a mistaken interpretation of that law cannot provide the requisite objective basis for suspecting the motorist of criminal activity, as the Minnesota Supreme Court has held: "Therefore, we hold that an officer's mistaken interpretation of a statute may not form the particularized and objective basis for suspecting criminal activity to justify a traffic stop." *State v. Anderson,* 683 N.W.2d 818, 823–24 (Minn.2004). This holding applies even if the officer believes, in good faith, that the driving conduct that prompted the stop was illegal. *Id.* at 824.

We review the district court's determination of the legality of a traffic stop de novo. *State v. Britton,* 604 N.W.2d 84, 87 (Minn.2000).

The statute on which the district court relied in concluding that Kilmer violated a traffic law when he entered the intersection on a yellow light is Minn.Stat. § 169.06, subd. 5(a)(2)(i) (Supp.2005), which provides that "[v]ehicular traffic facing a circular yellow signal is thereby warned that the related green movement is being terminated or that a red indication will be exhibited immediately thereafter when vehicular traffic must not enter the intersection...."

Subdivision 5(a)(2)(i) is one of three directly relevant "traffic-control signal" laws,

all found in subdivision 5. Subdivision 5(a)(1)(i) treats the issue of a green light, stating that "[v]ehicular traffic facing a circular green signal may proceed straight through or turn right or left. . . ." And subdivision 5(a)(3)(i) deals with a steady red light, providing that "[v]ehicular traffic facing a circular red signal alone must stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection. . . ."

In concluding that Kilmer violated a traffic law by entering the intersection on a yellow light, the district court erred in two respects. First, the court relied on a case that applied a "yellow-light" statute in effect in 1944, but not in effect at the time of Kilmer's arrest. The court relied on *Flitton v. Daleki*, 216 Minn. 549, 551, 13 N.W.2d 477, 478 (1944), and quoted its holding that Minn.Stat. § 169.06, subd. 5(b)(1), "prohibits entering an intersection after the yellow or caution light is shown." The version of the yellow-light statute in effect when *Flitton* was decided contained this prohibitory language: "Yellow alone, or 'Caution,' when shown following the green or 'Go' signal—(1) Vehicular traffic facing the signal shall stop before entering the nearest crosswalk at the intersection, but vehicles within the intersection may be driven cautiously through the intersection." Minn.Stat. § 169.06, subd. 5(b)(1) (1941).

Subdivision 5(b)(1) was amended during the 1947 legislative session, and codified in 1949, to delete the mandate that traffic shall not enter an intersection on a yellow light and to replace it as follows: "Vehicular traffic facing the signal is thereby warned that the red or 'Stop' signal will be exhibited immediately thereafter and such vehicular traffic shall not enter or be crossing the intersection when the red or 'Stop' signal is exhibited." Minn.Stat. § 169.06, subd. 5(b)(1) (1949).

The subdivision has been amended three more times since 1947. A 1963 amendment, which was codified in the 1965 Minnesota Statutes, contained warning language that "[v]ehicular traffic facing a steady yellow signal is thereby warned that the related green movement is being terminated or that a red indication will be exhibited immediately thereafter when vehicular traffic shall not enter the intersection." *Id.* (1965). Unlike the 1949 version, the 1965 version did not prohibit "crossing the intersection when the red or 'Stop' signal is exhibited." *Id.* (1949). In 1969, an amendment retained the language of the 1963 amendment regarding the warning nature of a yellow light but added an exception for proceeding on a red light when a green arrow is exhibited. *Id.* (1969). Finally, in 2005, the legislature amended the subdivision again but retained all of the language of the 1969 version, except the word "shall" in the phrase "traffic shall not enter the intersection" on a red light was replaced by the word "must." Minn.Stat. § 169.06, subd. 5(a)(2)(i) (Supp.2005).

Thus, the yellow-light statute in effect when Kilmer was arrested, and which is currently in effect, contains no prohibition against entering an intersection on a yellow light but rather discloses the meaning and the advisory-warning nature of that signal.

When a court is called upon to apply a statute to facts, the court must, of course, determine what the statute means. In doing so, the court must simply apply the statute as written when its meaning is plain and clear and free from ambiguity. Minn.Stat. § 645.16 (2006); *U.S. Specialty Ins. Co. v. James Courtney Law Office, P.A.*, 662 N.W.2d 907, 910 (Minn.2003); *State v. Soukup*, 656 N.W.2d 424, 427 (Minn.App.2003), *review denied* (Minn. Apr. 29, 2003). Furthermore, statutory

language must be viewed in its proper context. *See Chiodo v. Bd. of Educ. of Special Sch. Dist. No. 1,* 298 Minn. 380, 382, 215 N.W.2d 806, 808 (1974) ("[W]ords of a statute are to be viewed in their setting, not isolated from their context.").

It is true that subdivision 5(a)(2)(i), the yellow-light law, does not indicate expressly whether motorists must stop when a yellow signal is displayed or may continue into an intersection in the face of a yellow-light display. But that omission does not make the subdivision ambiguous, particularly when it is read in the context of its companion green-light and red-light laws. Those laws give the rules for the privilege of proceeding into an intersection and the mandate of stopping before entering the intersection. The yellow-light law is merely advisory, explaining the warning nature of that display. Subject to exceptions provided in the respective subdivisions, motorists can go on green and must not go on red and will receive a warning that a transition from the privilege to go to the mandate to stop is imminent. We find no ambiguity whatsoever in subdivision 5(a)(2)(i), and courts are not permitted to read ambiguities into laws in pursuit of a suggested spirit of the law. Minn.Stat. § 645.16; *Mattice v. Minn. Prop. Ins. Placement,* 655 N.W.2d 336, 341 (Minn. App.2002), *review denied* (Minn. Mar. 18, 2003).

▇ Even if subdivision 5(a)(2)(i) might be viewed as ambiguous, making interpretation necessary and appropriate, the task then is to ascertain the legislative intent of the law. Minn.Stat. § 645.16; *Conaway v. St. Louis County,* 702 N.W.2d 779, 783 (Minn.App.2005); *First Nat'l Bank of the N. v. Auto. Fin. Corp.,* 661 N.W.2d 668, 670 (Minn.App.2003), *review denied* (Minn. Aug. 5, 2003). Perhaps the history of the subdivision's amendments is the very best indication of legislative intent. Initially, it was illegal to enter an intersection on a yellow light. Minn.Stat. § 169.06, subd. 5(b)(1) (1941). Then the legislature decided to delete that prohibition but added a prohibition against "crossing the intersection when the red or 'Stop' signal is exhibited." *Id.* (1949). Impliedly that law allowed entry on a yellow light but virtually compelled a rapid traverse of the intersection to make it through before the light changed to red. Finally, the legislature enacted the version we have today, which penalizes neither an entry on yellow nor a failure to have completed the crossing before the red signal is displayed. By deleting prohibitory language in those two respects, the legislature evinced its intent not to prohibit such conduct. Thus, we hold that Minn.Stat. § 169.06, subd. 5(a)(2)(i)—the yellow-light traffic law— does not prohibit vehicles from entering an intersection after a steady yellow signal has been displayed. The district court erred in ruling otherwise, and the arresting officer, although without a doubt acting in good faith, was mistaken as to the meaning of the statute upon which he relied for articulable suspicion of criminal activity. Kilmer's convictions must be reversed because the traffic stop that resulted in discovery of the evidence supporting those convictions was improper, and the evidence must be suppressed.

We do not intend to suggest that motorists in all circumstances have a carte blanche privilege to enter an intersection on a yellow light or that there might not be circumstances in which such entry could become illegal. The yellow-light law does not operate in isolation from other traffic laws regarding speed, vehicle control, caution with regard to weather and visibility, following other vehicles, lookout, attention, and numerous other traffic statutes and ordinances. The officer here cited no other driving conduct than Kilmer's entry of

the intersection on a yellow light and his failure to cross fully before the light changed to red. That conduct alone, as we hold, is not prohibited.

## DECISION

Because we conclude that Minn.Stat. § 169.06, subd. 5(a)(2)(i) (Supp.2005), does not prohibit a driver's entry into an intersection on a steady yellow traffic light, we reverse the district court's determination that a police officer who stopped a car solely on that basis had a legally sufficient reason to make the stop, and we reverse the convictions resulting from the evidence obtained as a result of the stop.

**Reversed.**