State of Wisconsin, Plaintiff-Respondent,

v.

Antonio D. Brown, Defendant-Appellant.

Court of Appeals

*No. 2011AP2907–CR. Submitted on briefs November 6, 2012. —Decided January 15, 2013.*

2013 WI App 17

(Also reported in 827 N.W.2d 903.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Melinda A. Swartz* assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sarah L. Burgundy*, assistant attorney general, and *J.B. Van Hollen* attorney general.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. BRENNAN, J.   Antonio D. Brown appeals from a judgment entered after Brown pled guilty to possession of a firearm by a felon and from an order

denying his postconviction motion. Brown challenges the circuit court's decision that the traffic stop that led to the discovery of the firearm was constitutional, and the circuit court's decision denying him fourteen days of sentence credit for the time he spent in custody between the time his extended supervision was revoked and his sentence in this case was imposed. Because we agree with Brown that the police lacked probable cause to stop his vehicle before discovering the firearm, we reverse the judgment of conviction and the order denying his postconviction motion, and we need not address whether he is entitled to the sentence credit he seeks.

## BACKGROUND

¶ 2.   On July 7, 2010, the State filed a complaint charging Brown with felony possession of a firearm. The complaint alleged that, on July 3, 2010, police officers stopped a vehicle owned by Brown, in which Brown, a convicted felon, was riding in the back seat. During a subsequent search of the vehicle, the officers discovered a .38 caliber revolver under the front passenger's seat. Brown was on extended supervision for an armed robbery conviction in Milwaukee County Circuit Court Case No. 2004CF1991 at the time of the stop.

¶ 3.   Brown filed a motion to suppress the gun on the grounds that the police lacked probable cause or reasonable suspicion to stop the vehicle and that the warrantless search of the vehicle was improper.[1] The circuit court held a hearing on the motion.

¶ 4.   At the suppression hearing, Milwaukee Police Officer Michael Wawrzonek testified that, on July 3,

[1] We do not include the factual details surrounding the basis for the officers' search because Brown does not challenge the search on appeal. *See A.O. Smith Corp. v. Allstate Ins. Cos.,*

2010, he and his partner, Milwaukee Police Officer William Feely, observed a 1977 Buick Electra with a "defective tail light." When describing the "defective tail light," Officer Wawrzonek testified as follows: "It was the driver side tail lamp. There is a wide band and there is actually three light panels on that wide band and one of those panels was out." Based on the "defective tail light," the officers stopped the vehicle.

¶ 5. Officer Feely also testified that he and Officer Wawrzonek stopped a 1977 Buick Electra, on July 3, 2010, for a "[d]efective tail lamp." He testified that "the driver side middle one," a "[r]ed" light, was unlit.

¶ 6. The driver of the vehicle testified that the rear of the vehicle has two light compartments, one each on the driver's side and the passenger's side of the vehicle, and that each compartment has four light bulbs. The first three lights on either side are under a red panel, and the fourth is a white light next to the license plate. According to the driver, when the vehicle is being driven, the first and third light bulbs on each side of the vehicle are lit. The fourth light bulb, the white bulb near the license plate, is only lit when the vehicle is in reverse. The middle red light, that is, the second light on each side of the vehicle, is the brake light.[2] The driver testified that just before the police stopped the vehicle, he was at the back of the vehicle

222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) (An issue raised in the circuit court but not raised on appeal is deemed abandoned.).

[2] The driver's testimony describing the lights on the rear of the vehicle is supported by several photographs depicting the rear of the vehicle that were entered into evidence during the motion to suppress and that were helpfully included in the record on appeal.

filling it up with gas, and he observed that all of the tail lights were functioning properly.

¶ 7.   The circuit court denied Brown's motion to suppress, concluding that the stop was proper. The court found the officers' testimony credible, stating:

> Both officers testified about the defective tail lamp. And I think it's important that Officer Wawrzonek specifically said it was one of three lights on the driver's side. In looking at the picture, there are three lights that we're talking about here, that fourth one is the reverse light, as I was told in looking at the pictures. So he specifically is saying that one of those three [red] lights was out.

Based upon the police officers' testimony that they observed an unlit light bulb in the back of the vehicle, the circuit court concluded that the officers were justified in stopping the vehicle.

¶ 8.   Brown's counsel pointed out to the circuit court that based on the driver's testimony, the middle bulb on the tail lamp was a brake light and would not necessarily be illuminated when the tail lamp was on. Thus, he argued, the officers were incorrect in their belief that the tail lamp was defective. Brown's counsel's argument did not persuade the circuit court to grant the motion to suppress. However, during the plea hearing, the circuit court felt it necessary to further address counsel's concerns on the record:

> There was an issue 'cause there's four lights, and I know that the officers testified that one of the three lights was out and I found them to be credible and I still do, and I'm not changing anything that I said, but there was an issue raised as to the other light and whether or not that light would or wouldn't have been on or off and I think that there — if the officers even reasonably

believed that a light was out even if it's later shown to be not out, it forms the basis of a stop. I thought of that afterwards, that, you know, sometimes an officer could be mistaken given the age of a car as to which lights are supposed to be on and which ones aren't. Just stopping a car based on that, that could give them a basis if they believed that the taillight was out even if it's later to be shown that somehow that that light is supposed to not be on at that time. I don't think it's a fatal flaw in the stop itself if the officers were in fact mistaken. I'm not saying that they were, but I wanted to add that as far as analysis goes in my mind because I did think about that later.

¶ 9. During the January 26, 2011 plea hearing, Brown pled guilty to possession of a firearm by a felon. Two days later, on January 28, the circuit court sentenced Brown to five years of imprisonment, composed of three years of initial confinement and two years of extended supervision, running concurrently with his extended-supervision-revocation sentence.

¶ 10. Brown filed a timely notice of intent to pursue postconviction relief, and subsequently filed his postconviction motion. The postconviction motion requested that the circuit court vacate Brown's plea and sentence, and that it suppress all of the evidence seized during the stop of the vehicle because the stop violated the Fourth Amendment. Specifically, Brown asserted that even if one of the vehicle's tail lights had been defective, it did not amount to a traffic violation under Wis. Stat. § 347.13(1) (2009–10),[3] because that statute only requires that two tail lamps be "in good working order," and not that all of a vehicle's tail lights be lit. Brown also requested 209 days of sentence credit for

_____

[3] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

the time he spent in jail following his arrest on July 3, 2010, until he was sentenced on January 28, 2011.

¶ 11.   The circuit court denied Brown's motion to vacate both his plea and sentence. The court stated, in a written order, that:

> Even if the defendant had brought [Wis. Stat. § 347.13(1)] to the court's attention [during the suppression hearing], the result would have been the same. The court based its decision on the officers' reasonable belief that one of the lights on the vehicle was inoperable or defective. . . . The court's decision was based on the officers' objective viewing of the vehicle, and therefore, reference by counsel to sec. 347.13(1), Stats., would not have altered the outcome of the court's findings and conclusions.

However, the circuit court did grant Brown 195 days of sentence credit, fourteen days less than he requested. The circuit court concluded that Brown was only entitled to sentence credit from the time of his arrest, on July 3, 2010, until his extended supervision was officially revoked, on January 14, 2011, rather than from the date of his arrest until he was sentenced in the present case, on January 28, 2011. This appeal follows.

## DISCUSSION

¶ 12.   Brown challenges the circuit court's rulings on two grounds. First, he contends that the circuit court erred in denying his motion to suppress because the officers did not have probable cause or reasonable suspicion to stop the vehicle. Second, he argues that the circuit court erred when it failed to credit his sentence for those days he spent in custody up until the day he was sentenced on January 28, 2011. We address each of Brown's complaints in turn.

## I. The Stop.

¶ 13.  Brown argues that the circuit court erred when it denied his motion to suppress because the officers did not have reasonable suspicion or probable cause to stop the vehicle based upon the unlit light bulb.[4] We agree with Brown and reverse.

¶ 14.  The Fourth Amendment to the United States Constitution and art. I, § 11 of the Wisconsin Constitution protect citizens against unreasonable searches and seizures.  " 'The temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment.' " *State v. Popke*, 2009 WI 37, ¶ 11, 317 Wis. 2d 118, 765 N.W.2d 569 (citation omitted). A traffic stop is generally reasonable if officers have reasonable suspicion that a violation has been or will be committed or if they have probable cause to believe a traffic violation has occurred. *Id.*

> Reasonable suspicion is based upon specific and articulable facts that together with reasonable inferences therefrom reasonably warrant a *suspicion* that an offense has occurred or will occur. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). It is insufficient to support an arrest or search, but permits further investigation. *Brown v. Texas*, 443 U.S. 47, 51 (1979); *State v. Cheers*, 102 Wis. 2d 367, 386–87, 306 N.W.2d 676 . . . (1981).

---

[4] Ordinarily, a guilty plea waives all nonjurisdictional defects and defenses. *See County of Racine v. Smith*, 122 Wis. 2d 431, 434, 362 N.W.2d 439 (Ct. App. 1984). A narrowly crafted exception to this rule exists in Wis. Stat. § 971.31(10), which permits appellate review of an order denying a motion to suppress evidence, notwithstanding a guilty plea. *Id.*

> Probable cause is a common sense test that looks to the totality of the circumstances facing the officer at the time of the arrest to determine whether the officer could have reasonably believed the defendant had committed, or was committing, an offense. *County of Dane v. Sharpee*, 154 Wis. 2d 515, 518, 453 N.W.2d 508 . . . (Ct. App. 1990).

*State v. Longcore*, 226 Wis. 2d 1, 8, 594 N.W.2d 412 (Ct. App. 1999).

¶ 15.   Here, the officers observed that the middle, red light bulb on the rear driver's side of the vehicle was unlit, and stopped the vehicle because they believed that the unlit light bulb constituted an equipment violation. They "did not act upon a suspicion that warranted further investigation, but on [their] observation of a violation being committed in [their] presence." *See id.* at 8–9 (footnote omitted). As such, the issue before us is whether the officers had probable cause that a law had been broken supporting the stop, not whether there was reasonable suspicion to support the stop. *See id.*

¶ 16.   Whether there is probable cause to justify a traffic stop is a question of constitutional fact. *Popke*, 317 Wis. 2d 118, ¶ 10. "A question of constitutional fact is a mixed question of law and fact to which we apply a two-step standard of review. We review the circuit court's findings of historical fact under the clearly erroneous standard, and we review independently the application of those facts to constitutional principles." *State v. Post*, 2007 WI 60, ¶ 8, 301 Wis. 2d 1, 733 N.W.2d 634 (internal citations omitted).

¶ 17.   Brown contends that the officers' stop of the vehicle was predicated on a mistake of law because Wis.

STAT. § 347.13(1) does not require that all of a vehicle's tail lights be lit. The meaning of a statute presents a question of law, which we review *de novo. State v. Long*, 2011 WI App 146, ¶ 4, 337 Wis. 2d 648, 807 N.W.2d 12. When we construe a statute we begin with the language of the statute and give it its common meaning. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context of surrounding or closely-related statutes, and we interpret it reasonably to avoid unreasonable results. *Id.*, ¶ 46.

¶ 18.  WISCONSIN STAT. § 347.13(1) states, in relevant part:   "No vehicle originally equipped at the time of manufacture and sale with 2 tail lamps shall be operated upon a highway during hours of darkness unless both such lamps are in good working order." " 'Tail lamp' " is defined as "a device to designate the rear of a vehicle by a warning light." WIS. STAT. § 340.01(66) (defining "tail lamp"); WIS. STAT. § 347.01 (making § 340.01 applicable to WIS. STAT. ch. 347).

¶ 19.  The parties agree with the circuit court's finding that the police officers stopped the vehicle because "the middle" rear tail light on the driver's side of the vehicle was unlit. It is undisputed that both the first and the third rear light bulbs on both the driver's side and the passenger's side (totaling four lights) were lit. The driver testified, and his testimony is undisputed, that those four lights were lit whenever the vehicle was in motion, and therefore, they were the lights which designated the rear of the vehicle, to wit, all four of the lights which made up the vehicle's two tail lamps were in working order.[5]

---

[5] The circuit court found incredible the driver's testimony that he observed that all of the vehicle's lights were in working

¶ 20.   Brown argues that even if the second light was unlit and was part of the vehicle's tail lamp, when a vehicle's tail lamp is made up of three lights, and two of those lights are lit, the tail lamp is "in good working order" as required by Wis. Stat. § 347.13(1). As such, Brown contends that the police officers had no basis to stop the vehicle and the stop was unconstitutional. We agree.

¶ 21.   A tail lamp with one of three light bulbs unlit does not violate Wis. Stat. § 347.13(1) when it otherwise meets the statutory definition of a tail lamp. The statute does not require that a vehicle's tail lamps be fully functional or in perfect working order. It only requires "good working order." *See id.* Here, the two lit light bulbs making up the driver's side tail lamp satisfied the definition of a tail lamp as "a device to designate the rear of a vehicle by a warning light." *See* Wis. Stat. § 340.01(66). Because the two lit light bulbs on the rear driver's side of the vehicle were sufficient to designate the rear of the vehicle to a vehicle travelling behind it, the officers did not have probable cause of a traffic violation and the stop was unconstitutional. The officers mistakenly believed that the law required all of the tail lamps light bulbs to be lit; and "a lawful stop cannot be predicated upon a mistake of law." *See Longcore,* 226 Wis. 2d at 9. As such, we reverse.[6]

order just prior to the stop. The court based its finding on the fact that it "just [thought] people do not pay attention to that type of thing on a regular basis, particularly to a day." However, the court did not find incredible the driver's testimony as it related to the location and function of each of the lights.

[6] Because we reverse on the merits, we need not address Brown's alternative argument that his trial counsel was ineffective.

## II.   Sentence Credit.

¶ 22.   Brown also challenges the circuit court's order denying him sentence credit for the fourteen days between the date of his revocation order (January 14, 2011) and the date he was sentenced in this case (January 28, 2011). Because we reverse the judgment of conviction, we need not address whether Brown was entitled to credit for those days. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (An appellate court should decide cases "on the narrowest possible ground."). We note, however, that the State concedes that, had Brown's conviction stood, he would have been entitled to the sentence credit he seeks.

*By the Court.*—Judgment and order reversed.