ANN WALSH BRADLEY, J.
¶ 1. The State of Wisconsin seeks review of a published decision of the court of appeals[1] that reversed the circuit court's denial of Antonio Brown's motion to vacate his conviction and plea and to suppress all evidence seized during a stop of his vehicle. The court of appeals determined that the circuit court erred because there was no probable cause or reasonable suspicion to stop Brown's vehicle. Accordingly, it concluded that the evidence resulting from the search should have been suppressed.
¶ 2. The State contends that the officers' observation of an unlit light bulb in Brown's tail lamp justified a stop because the law requires all light bulbs in a tail lamp to be lit. It asserts that this requirement is found in Wis. Stat. § 347.13(1) (2009-10),[2] which prohibits the operation of a vehicle at night unless its tail lamps are in "good working order." Because the officers observed a *673 violation of the law, the State maintains that they had probable cause to stop the vehicle. Even if the unlit bulb was not part of the tail lamp, the State contends that it still created reasonable suspicion to stop the vehicle and the results of the search should not be suppressed.
¶ 3. Contrary to the State, we do not interpret Wis. Stat. § 347.13(1) as requiring every single light bulb in a tail lamp to be lit. The plain language of the statute requires that a tail lamp emit a red light visible from 500 feet behind the vehicle during hours of darkness. This interpretation is further supported by related statutes requiring that the lamps be in proper working condition. Wis. Stat. § 347.06(3).
¶ 4. Because the only basis for the stop of Brown's vehicle was the unlit bulb, we conclude that there was not probable cause or reasonable suspicion to stop the vehicle. Where the stop of the vehicle was unlawful, so too was its search, and the results of that search must be suppressed. Accordingly, we affirm the court of appeals.
I
¶ 5. It is uncontested that Brown was a passenger in a Buick Electra that was stopped by police officers. During the stop, the officers searched the vehicle and discovered a gun. Brown was charged with possession of a firearm by a felon, in violation of Wis. Stat. § 941.29(2). He subsequently filed a motion to suppress the gun, asserting that the officers lacked reasonable suspicion or probable cause to stop the vehicle.
¶ 6. At the motion hearing the State presented the testimony of Officer Wawrzonek and Officer Feely. Although some details varied, the officers' testimony regarding the stop of Brown's vehicle was largely consistent.
*674 ¶ 7. According to the officers, they were on a routine patrol when they spotted a 1977 Buick Electra with a "defective tail light." Officer Wawrzonek explained that there was a "wide band" with three light panels on the back of the vehicle and one of the panels was out. Officer Feely stated that it was the middle light on the driver's side that was out. Based on the Buick's "defective" tail lamp, Officer Feely activated the flashing red and blue lights on their patrol car and conducted a traffic stop. After stopping the vehicle and removing its passengers, Officer Feely searched the vehicle and discovered a firearm under the front passenger-side seat.
¶ 8. Brown presented the testimony of Willie Lipsey who stated that on the night of the stop he attended a barbeque with Brown. When they left, Lipsey drove Brown's car because Brown was intoxicated. Lipsey testified that he stopped at a gas station and observed that the tail lamps were functioning properly when he pumped gas into the car. He was in a position to see this as the gas tank of the Buick is behind the rear license plate. After leaving the gas station, Lipsey headed home. The stop occurred as he was parking.
¶ 9. Several photographs of the back of Brown's vehicle were admitted into evidence. One photograph is a close-up view of the rear-passenger side of the vehicle with the outside panel encasing the tail lamp removed. Four light bulbs are visible: a cluster of three bulbs on the left-hand side and a fourth bulb toward the center of the vehicle next to its license plate. In explaining the photo, Lipsey testified that the first and third lights were tail lights, the second light was a brake light, and the separate light was a reverse light. According to Lipsey, only the two tail lights are lit when the car is driving down the street.
*675 ¶ 10. The circuit court denied the suppression motion. It determined that Lipsey's testimony that the tail lights were working was not credible. In contrast, it found the officers' testimony to be credible and therefore determined that there was probable cause for the stop. It further determined that the search was justified by the need to protect the officers' safety.
¶ 11. Following the ruling, Brown pled guilty to the charge.[3] Subsequently, the court sentenced Brown to five years imprisonment with three years initial confinement and two years extended supervision.
¶ 12. Brown submitted a motion for postconviction relief seeking an order vacating his conviction and guilty plea and suppressing all evidence seized during the stop of the Buick. Citing Wis. Stat. § 347.13(1), he asserted that there was no basis for the stop because under the law only two tail lamps must be in good working order, not all of four of them. Accordingly, he contended that the stop of the Buick was unconstitutional and evidence found during its search must be suppressed.[4]
¶ 13. The circuit court denied the postconviction motion. It determined that the officers had a reasonable *676 belief that one of the vehicle's tail lamps was defective. Even if the officers were wrong, the court stated, that did not affect their reasonable belief at the time of the stop.
¶ 14. On appeal, Brown again argued that the evidence from the search of the vehicle should have been suppressed because there was no probable cause or reasonable suspicion for the stop.
¶ 15. Although a stop can be based on either probable cause or reasonable suspicion, the court of appeals determined that the issue in this case was whether the unlit bulb created probable cause. State v. Brown, 2013 WI App 17, ¶¶ 14-15, 346 Wis. 2d 98, 827 N.W.2d 903. It noted the officers' testimony that they stopped the vehicle because of the unlit bulb, stating "[t]hey did not act upon a suspicion that warranted further investigation, but on [their] observation of a violation being committed in [their] presence." Id. at ¶ 15 (quoting State v. Longcore, 226 Wis. 2d 1, 8-9, 594 N.W.2d 412 (Ct. App. 1999)). Because the officers were not acting on a suspicion, but on what they believed was a violation of law being committed in their presence, the court concluded that probable cause was the appropriate focus. Id.
¶ 16. The court of appeals agreed with Brown. Id. at ¶ 21. It reasoned that under Wis. Stat. § 347.13(1) a vehicle's tail lamps do not need to be fully lit or in perfect condition in order to be in "good working order." Id. Noting that a lawful stop cannot be predicated on a mistake of law, the court determined that the officers' mistaken belief that all the tail lights on a vehicle need *677 to be lit could not serve as probable cause for a stop. Id. (citing Longcore, 226 Wis. 2d at 9). Accordingly, it reversed the circuit court.[5]
II
¶ 17. In this case we are asked to consider whether Brown's vehicle was lawfully stopped.[6] "Whether there is probable cause or reasonable suspicion to stop a vehicle is a question of constitutional fact." State v. Popke, 2009 WI 37, ¶ 10, 317 Wis. 2d 118, 765 N.W.2d 569. As such, it is a mixed question of fact and law, requiring a two-step standard of review. State v. Post, 2007 WI 60, ¶ 8, 301 Wis. 2d 1, 733 N.W.2d 634. This court reviews the circuit court's findings of fact under the clearly erroneous standard, and reviews independently the application of those facts to constitutional principles. Id.
*678 ¶ 18. Here, the relevant facts are undisputed. The parties agree that the officers stopped Brown's vehicle because one of the three lights on the rear driver's side of the car was not lit. Thus, our inquiry focuses on whether under the facts there were sufficient grounds for a traffic stop. This inquiry calls upon us to interpret the relevant statute establishing the requirements for vehicle tail lamps, Wis. Stat. § 347.13(1). Statutory interpretation is a question of law that we review independently of the decisions rendered by the circuit court and the court of appeals. State v. Ziegler, 2012 WI 73, ¶ 37, 342 Wis. 2d 256, 816 N.W.2d 238.
Ill
¶ 19. We begin our analysis by examining the constitutional principles underlying traffic stops. The Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect citizens from unreasonable searches and seizures.[7] Traffic stops are considered seizures and thus must be reasonable to pass constitutional muster. *679 Popke, 317 Wis. 2d 118, ¶ 11; Whren v. United States, 517 U.S. 806, 809-10 (1996). If the seizure is unreasonable and therefore unconstitutional, then evidence obtained as a result is generally inadmissible. State v. Harris, 206 Wis. 2d 243, 263, 557 N.W.2d 245 (1996). A good faith exception to this rule applies in limited circumstances such as where the police have relied in good faith on either a warrant issued by a detached and neutral magistrate or on well-settled law that was subsequently overturned. State v. Dearborn, 2010 WI 84, ¶ 44, 327 Wis. 2d 252, 786 N.W.2d 97; State v. Eason, 2001 WI 98, ¶ 3, 245 Wis. 2d 206, 629 N.W.2d 625.
¶ 20. The burden is on the State to prove that a stop meets the constitutional reasonableness requirement. Post, 301 Wis. 2d 1, ¶ 12; Harris, 206 Wis. 2d at 263. A traffic stop can be based on probable cause or reasonable suspicion. State v. Gaulrapp, 207 Wis. 2d 600, 605, 558 N.W.2d 696 (Ct. App. 1996) (citing Whren, 517 U.S. at 809-10; Berkemer v. McCarty, 468 U.S. 420, 439 (1984)). "[P]robable cause exists when the officer has 'reasonable grounds to believe that the person is committing or has committed a crime.'" Popke, 317 Wis. 2d 118, ¶ 14 (quoting Johnson v. State, 75 Wis. 2d 344, 348, 249 N.W.2d 593 (1977)). There is reasonable suspicion justifying a stop if "the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime." Post, 301 Wis. 2d 1, ¶ 13.
*680 ¶ 21. In this case, the officers stopped Brown's vehicle because one of the bulbs on the back of the vehicle was unlit. The State asserts that the unlit bulb created probable cause to stop the vehicle because it violated the requirement in Wis. Stat. § 347.13(1) that tail lamps be in "good working order." It further contends that even if the officers were wrong and the unlit bulb was not part of the tail lamp, the unlit bulb still created reasonable suspicion that Wis. Stat. § 347.13(1) was being violated. Brown disagrees with both contentions, arguing that Wis. Stat. § 347.13(1) does not require all bulbs in a tail lamp to be lit and thus the officers had neither probable cause nor reasonable suspicion to stop his vehicle.
¶ 22. Both parties agree that if the officers' interpretation of the law were incorrect that the stop would be unconstitutional because a lawful stop cannot be predicated upon a mistake of law. Longcore, 226 Wis. 2d at 9. At oral argument, the State explicitly stated that "we are not challenging Longcore."[8] In its supplemental briefing the State maintained that "the existence of probable cause or reasonable suspicion in the context of *681 a traffic stop depends on the correct interpretation of the statute prohibiting the conduct." [9]
¶ 23. A substantial majority of the federal circuit courts have also held that a lawful stop cannot be predicated upon a mistake of law.[10] United States v. Williams, 740 F.3d 308, 312 (4th Cir. 2014) ("Nor do we suggest that a police officer's mistake of law can support probable cause to conduct a stop when the underlying conduct was not, in fact, illegal."); United States v. McDonald, 453 F.3d 958, 962 (7th Cir. 2006) (determining stop was unreasonable where "even if [the driver] acted exactly as [the officer] believed, his actions were not a violation of any Illinois state traffic law."); United States v. Coplin, 463 F.3d 96, 101 (1st Cir. 2006) ("Stops premised on a mistake of law, even a reasonable, good-faith mistake, are generally held to be unconstitutional."); United States v. Tibbetts, 396 F.3d 1132, *682 1138 (10th Cir. 2005) ("[F]ailure to understand the law by the very person charged with enforcing it is not objectively reasonable."); United States v. Chanthasouxat, 342 F.3d 1271, 1279 (11th Cir. 2003) ("[A] mistake of law cannot provide reasonable suspicion or probable cause to justify a traffic stop."); United States v. Twilley, 222 F.3d 1092, 1096 (9th Cir. 2000) ("[I]n this circuit, a belief based on a misunderstanding of the law cannot constitute the reasonable suspicion required for a constitutional traffic stop."); United States v. Miller, 146 F.3d 274, 279 (5th Cir. 1998) ("[G]iven that having a turn signal on is not a violation of Texas law, no objective basis for probable cause justified the stop of Miller").
¶ 24. As the Seventh Circuit has explained, "[a]n officer cannot have a reasonable belief that a violation of the law occurred when the acts to which an officer points as supporting probable cause are not prohibited by law." McDonald, 453 F.3d at 961. The grounds for a traffic stop must be objectively reasonable and "[a] stop based on a subjective belief that a law has been broken, when no violation actually occurred, is not objectively reasonable." Id. at 962. Admitting evidence into the record on such a basis "would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey." Id. (quoting United States v. Lopez-Soto, 205 F.3d 1101, 1106 (9th Cir. 2000)); see also Wayne A. Logan, Police Mistakes of Law, 61 Emory L.J. 69, 106 (2011) ("there has been no mistaking that the specter of [the exclusionary rule's] application has prompted police departments to significantly fortify and improve their training efforts relative to Fourth Amendment expectations.").
*683 ¶ 25. Further, the rule that an officer's mistake of law is not sufficient grounds for a stop is consistent with holdings from a substantial majority of the state courts that have addressed the issue. State v. Babcock, 992 N.E.2d 1215, 1220 (Ohio Ct. App. 2013) ("[W]e hold that the exclusionary rule operates to bar the admission of evidence obtained as a result of a traffic stop based on conduct that a police officer mistakenly believes is a violation of the law."); Martin v. Kan. Dep't of Revenue, 176 P.3d 938, 948 (Kan. 2008) ("[A] police officer must be held to a more demanding standard of legal knowledge than any citizen who may be subject to the officer's exercise of authority. . . . [Consequently [we] hold that an officer's mistake of law alone can render a traffic stop violative of the Fourth Amendment. . . ."); State v. Tiffin, 121 P.3d 9, 12 (Or. Ct. App. 2005) ("[T]he facts, as the officer perceives them, must actually constitute an infraction in order for the officer's belief that an infraction occurred to be objectively reasonable."). See also State v. Cantsee, 321 P.3d 888, 891 (Nev. 2014); State v. Dunbar, 728 S.E.2d 539, 545 (W Va. 2012); State v. Louwrens, 792 N.W.2d 649, 654 (Iowa 2010); McDonald v. State, 947 A.2d 1073, 1079-80 (Del. 2008); State v. Williams, 185 S.W.3d 311, 319 (Tenn. 2006); State v. Lacasella, 60 P.3d 975, 981 (Mont. 2002); State v. Lussier, 757 A.2d 1017, 1029 (Vt. 2000); Commonwealth v. Rachau, 670 A.2d 731, 735 (Pa. Commw. Ct. 1996); Commonwealth v. Bernard, 3 N.E.3d 1113, 1115 n.2 (Mass. App. Ct. 2014); Gilmore v. State, 42 A.3d 123, 135 (Md. Ct. Spec. App. 2012); Robinson v. State, 377 S.W.3d 712, 722 (Tex. Crim. App. 2012); J.D.I. v. State, 77 So. 3d 610, 617 (Ala. Crim. App. 2011); Gunn v. State, 956 N.E.2d 136, 139 (Ind. Ct. App. 2011); People v. Cole, 874 N.E.2d 81, 88 (Ill. App. Ct. 2007); State v. Kilmer, 741 N.W.2d 607, 611 (Minn. Ct. App. 2007); *684 People v. Ramirez, 44 Cal. Rptr. 3d 813, 816 (Cal. App. 2006); State v. Puzio, 878 A.2d 857, 860 (NJ App. Div. 2005); Gordon v. State, 901 So. 2d 399, 405 (Fla. Dist. Ct. App. 2005); Byer v. Jackson, 661 N.Y.S.2d 336, 338 (N.Y. App. Div. 1997).[11]
¶ 26. Having examined the application of constitutional principles underlying traffic stops, we turn to address the interpretation of Wis. Stat. § 347.13(1) in order to apply those principles in this case. Statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. The language in a statute "is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. Further, a statute's language is interpreted in the context in which it is used, "in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. at ¶ 46.
¶ 27. Wisconsin Stat. § 347.13(1) requires a vehicle to have at least one tail lamp which emits a red light visible to another vehicle traveling 500 feet behind it and prohibits operation of a vehicle at night when its tail lamps are not "in good working order." Wis. Stat. § 347.13(1). The statute provides:
No person shall operate a motor vehicle . .. upon a highway during hours of darkness unless such motor vehicle... is equipped with at least one tail lamp mounted on the rear which, when lighted during hours *685 of darkness, emits a red light plainly visible from a distance of 500 feet to the rear. No tail lamp shall have any type of decorative covering that restricts the amount of light emitted when the tail lamp is in use. No vehicle originally equipped at the time of manufacture and sale with 2 tail lamps shall be operated upon a highway during hours of darkness unless both such lamps are in good working order.
Wis. Stat. § 347.13(1) (emphasis supplied). The term "tail lamp" is defined as "a device to designate the rear of a vehicle by a warning light."[12] Wis. Stat. § 340.01(66). At issue in this case is what constitutes a tail lamp in "good working order."
¶ 28. The phrase "good working order" is not defined in the statute, thus we accord the phrase its common, ordinary and accepted meaning. "In determining the ordinary meaning of undefined words, '[w]e may consult a dictionary to aid in statutory construction." Xcel Energy Servs. v. Labor & Indus. Review Comm'n, 2013 WI 64, ¶ 30, 349 Wis. 2d 234, 833 N.W.2d 665 (quoting Cnty. of Dane v. Labor & Indus. Review Comm'n, 2009 WI 9, ¶ 23, 315 Wis. 2d 293, 759 N.W.2d 571).
¶ 29. Dictionary definitions of "good," "working," and "working order" suggest that the term "good working order" means suitable or functioning for the intended use.[13] Thus, the ordinary meaning of "good *686 working order" focuses on whether an object is functioning so as to fulfill its intended purpose.
¶ 30. Further, construing "good working order" in the context of Wis. Stat. § 347.13(1) to mean functioning for the intended purpose is consistent with how we have construed "good working order" in the past.
¶ 31. In State v. Trailer Service, Inc., 61 Wis. 2d 400, 404, 212 N.W.2d 683 (1973), the court looked to function when determining whether a certified scale for weighing a vehicle was in "good working order." The case involved a dispute over whether a truck had been properly weighed before its driver was given a citation for overload. Id. at 402. The court examined two statutes: Wis. Stat. § 348.19(1)(a), permitting an officer to require a truck to be weighed on the nearest usable scale, and Wis. Stat. § 348.15(5), requiring trucks to be weighed on scales that are in "good working order." Id. at 404-05. It noted that" '[u] sable' also means 'in good working order,' i.e., in such operating or mechanical *687 condition that it correctly performs the function or utility or the purpose of a scale." Id. at 405. Accordingly, the court determined that the scale's use was permissible because it was shown to make true and accurate measurements. Id.
¶ 32. Other jurisdictions have also focused on function when determining whether tail lamps are in compliance with a statutory requirement that they be in good or proper working order. See Kroft v. State, 992 N.E.2d 818, 822 (Ind. Ct. App. 2013) (determining that a tail lamp was still in good working order despite a dime-sized hole because there was no evidence the hole affected the visibility of the light to another vehicle); Vicknair v. State, 751 S.W.2d 180, 189-90 (Tex. Crim. App. 1988) (taillight in proper condition despite crack in a taillight because it still emitted a red light visible within the requisite distance).[14] We likewise conclude the focus should be on the function of a tail lamp in determining whether it is in "good working order" under Wis. Stat. § 347.13(1).
¶ 33. The statutory definition of "tail lamp" provides that its intended purpose is to "designate the rear of a vehicle as a warning light." Wis. Stat. § 340.01(66). The language of Wis. Stat. § 347.13(1) clarifies that a tail lamp does so by emitting during hours of darkness "a red light plainly visible from a distance of 500 feet to the rear." Accordingly, a tail lamp is functioning for its intended use and thus in good working order when *688 during hours of darkness it emits a red warning light that is visible to another vehicle traveling 500 feet behind it.
¶ 34. We do not agree with the State that when read in the context of surrounding statutes Wis. Stat. § 347.13(1) requires all light bulbs in a tail lamp to be lit. The State points to Wis. Stat. § 347.06(3) and Wis. Admin. Code § Trans. 305.16(2) which require tail lamps to be kept in "proper working condition." However, "proper" is not a synonym for "perfect." Rather it is more akin to "good" or "suitable."[15] Thus, the statutes requiring tail lamps to be in proper working condition are more in line with requiring a tail lamp to function for its intended purpose than with requiring all light bulbs in a tail lamp to function perfectly.
¶ 35. Construing Wis. Stat. § 347.13(1) as requiring every single light bulb on the back of a vehicle to be in perfect condition would lead to absurd and unreasonable results. Not only is such an interpretation inconsistent with the plain language of the statute, but it is also not practical considering the variety of tail lamp designs today. Brown points to tail lamps that are composed of multiple light bulbs creating intricate designs. He cites as an example the tail lamp of an Audi, composed of thirty tiny light bulbs, which is pictured in his brief. We agree with Brown that there is nothing to suggest that a single unlit bulb out of several in a tail lamp would necessarily impair the tail lamp's function.
*689 ¶ 36. Wisconsin Stat. § 347.13(1) requires that vehicles with two tail lamps not be operated during hours of darkness "unless both such lamps are in good working order." It would be unreasonable to require the public to maintain every light bulb in a tail lamp in perfect condition when that is more than is required by the statute. The legislature determined that visibility from 500 feet is sufficient to protect public safety and we defer to its policy decisions.
¶ 37. Contrary to the State's assertions, the standard we adopt is not unworkable and does not fail to give guidance to police officers. This interpretation requires officers to determine if they can see a red light emitted from the back of a vehicle from a distance of 500 feet. Officers routinely have to gauge distances to determine whether motorists have violated traffic laws. See, e.g., Wis. Stat. § 346.33(1)(e) (requires officers to determine whether a driver making a U-turn on a curve or crest can be seen by another driver approaching from 500 feet); § 346.51(1)(b) (requires officers to determine if a standing vehicle can be seen by operators of other vehicles from a distance of 500 feet); § 346.14 (requires officers to determine whether there are 500 feet between vehicles). We are confident that they can apply that ability to determine whether Wis. Stat. § 347.13(1) has been violated as well.
¶ 38. In this case, the only basis that the State presented for the stop of Brown's vehicle was the unlit bulb in his tail lamp. However, there was no evidence that his tail lamp was not visible from 500 feet to the rear of the car. The officers testified that only one of the bulbs on the back of Brown's vehicle was unlit. Because having one unlit bulb on the back of a vehicle does not on its own violate the statutory requirements for tail *690 lamps, the State has failed to show that the officers had probable cause to believe that a traffic violation had occurred.
¶ 39. We likewise reject the State's alternative argument that it had reasonable suspicion for the traffic stop. The State asserts that the officers could have reasonably believed that the unlit light bulb was part of the tail lamp. In this case, such an argument is inextricably intertwined with the interpretation of the underlying traffic violation. It fails because even assuming the officers made a mistake of fact regarding whether the unlit light bulb was part of the tail lamp, they would still have to rely on a mistake of law to have reasonable suspicion.
¶ 40. Like probable cause, reasonable suspicion cannot be based on a mistake of law. Rabin v. Flynn, 725 F.3d 628, 633 (7th Cir. 2013) ("[A] police officer's suspicion of wrongdoing that is premised on a mistake of law cannot justify a Terry stop."); United States v. Tyler, 512 F.3d 405, 411 (7th Cir. 2008) ("[A] mistake of law (as opposed to a mistake of fact) cannot justify an investigative detention."); Chanthasouxat, 342 F.3d at 1279 ("[A] mistake of law cannot provide reasonable suspicion or probable cause to justify a traffic stop.").
¶ 41. Because one unlit bulb in a tail lamp does not establish a violation of Wis. Stat. § 347.13(1), the unlit light bulb on Brown's vehicle was an insufficient basis to reasonably suspect that Brown had committed, was committing, or was about to commit a crime. Given that there was no lawful basis asserted as grounds for stopping Brown's vehicle, the evidence the officers found in the vehicle pursuant to that stop is "the fruit" of an illegal seizure. Harris, 206 Wis. 2d at 263. Accordingly, the evidence resulting from the search should be suppressed.
*691 IV
¶ 42. In sum, we do not interpret Wis. Stat. § 347.13(1) as requiring every single light bulb in a tail lamp to be lit. The plain language of the statute requires that a tail lamp emit a red light visible from 500 feet behind the vehicle during hours of darkness. This interpretation is further supported by related statutes requiring that the lamps be in proper working condition.
¶ 43. Because the only basis for the stop of Brown's vehicle was the unlit bulb we conclude that there was not probable cause or reasonable suspicion to stop the vehicle. Where the stop of the vehicle was unlawful, so too was its search, and the results of that search must be suppressed. Accordingly, we affirm the court of appeals.

By the Court.

The decision of the court of appeals is affirmed.

 State v. Brown, 2013 WI App 17, 346 Wis. 2d 98, 827 N.W.2d 903 (reversing order of the circuit court for Milwaukee County, Rebecca F. Dallet, J.).

 All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

 Although a guilty plea generally waives all nonjurisdictional defects and defenses, there is an exception which permits appellate review of orders denying motions to suppress evidence. Wis. Stat. § 971.31(10); Cnty. of Racine v. Smith, 122 Wis. 2d 431, 434-35, 362 N.W.2d 439 (Ct. App. 1984).

 In the alternative, Brown argued to the circuit court that he was denied effective assistance of counsel because his trial attorney failed to bring Wis. Stat. § 347.13(1) to the court's attention. The court concluded that this argument was unconvincing because it did not agree with Brown's interpretation of Wis. Stat. § 347.13(1). Brown's motion also requested an order amending the judgment of conviction to include 209 days of sentence credit for the time he spent in jail between the date of *676 his arrest and the date of his sentencing. The court determined that Brown was entitled to 195 days, not 209 days of sentence credit.

 Because it reversed on the merits, the court of appeals did not address Brown's alternative argument that his trial counsel was ineffective. Brown, 346 Wis. 2d 98, ¶ 21 n.6. Brown also appealed the issue of his sentence credit. The court also determined that it did not need to address Brown's sentencing credit issue because it reversed his conviction. It noted that the State had conceded that had Brown's conviction stood, he would have been entitled to the sentence credit he sought. Id. at ¶ 22. For the same reason as the court of appeals, we also do not address the issues of ineffective assistance of counsel or Brown's sentence credit.

 When accepting the petition for review, we asked the parties to address the propriety of the search in light of Arizona v. Gant, 556 U.S. 332 (2009). Both parties affirmatively stated that Gant does not apply and that the issue in this case is whether the stop itself violated Brown's rights, not the subsequent search. Accordingly, we limit our analysis to the reasonableness of the stop of Brown's vehicle. *679 provisions may provide greater protections." Id. (citing State v. Eason, 2001 WI 98, ¶ 63, n.31, 245 Wis. 2d 206, 629 N.W.2d 625).

 The Fourth Amendment of the United States Constitution states "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause ...." Likewise, Article I, Section 11 of the Wisconsin Constitution, provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause ...."
This court generally interprets the protections against unreasonable searches and seizures afforded by the state and federal constitutions coextensively. State v. Post, 2007 WI 60, ¶ 10 n.2, 301 Wis. 2d 1, 733 N.W.2d 634. "However, the state

 At oral argument counsel for the State engaged in the following exchange:
Justice Ziegler: Why couldn't [the stop] be based upon the officer's reasonable belief that the tail light was out?
Attorney for the State: It could be based on the- if the officer could reasonably believe that that bulb was part of the tail lamp, and the law requires that all the bulbs be lit in the tail lamp, if that's correct, then the stop would be valid on the basis of-
Chief Justice Abrahamson: Even if he's wrong.
Attorney for the State: Even if he's wrong about the facts. But if he's wrong about the law, then we are conceding that the stop was invalid.

 After oral argument this court asked the parties for supplemental briefing. Specifically, the court asked the parties to brief:
1) whether the officer had reasonable suspicion to stop Brown's vehicle because the officer believed that Wis. Stat. § 347.13(1) was violated when not all the tail light bulbs on Brown's vehicle were working.
2) whether an officer's good faith mistake of law on which the officer makes a traffic stop, requires reviewing courts to conclude that the stop was not lawful.
State v. Brown, No. 2011AP2907, unpublished order (Feb. 26, 2014).

 Justice Roggensack's dissent advocates a minority position. Only three circuit courts have adopted an approach which would permit a stop based on an error of law: the D.C. Circuit, the Third Circuit, and the Eighth Circuit. See United States v. Southerland, 486 F.3d 1355, 1359 (D.C. Cir. 2007); United States v. Delfin-Colina, 464 F.3d 392, 399 (3d Cir. 2006); United States v. Bueno, 443 F.3d 1017, 1024 (8th Cir. 2006).

 We acknowledge that a minority of the state courts that have addressed the issue have taken a contrary position. See, e.g., State v. Heien, 737 S.E.2d 351 (N.C. 2012); Moore v. State, 986 So. 2d 928, 935 (Miss. 2008); Travis v. State, 959 S.W.2d 32, 34 (Ark. 1998); McConnell v. State, 374 S.E.2d 111, 113 (Ga. Ct. App. 1988); DeChene v. Smallwood, 311 S.E.2d 749, 751 (Va. 1984).

 Because Wis. Stat. § 340.01(66) defines "tail lamp" as "a device," it is the entire tail lamp, and not each individual light bulb in the tail lamp, that must function as indicated by Wis. Stat. § 347.13(1).

 For definitions of "good" see The American Heritage Dictionary of the English Language 780 (3d ed. 1992) ("[s]erving the desired purpose or end, suitable"); The Random House *686 Unabridged Dictionary 822 (2d ed. 1993) ("satisfactory in quality, quantity, or degree"); and Webster's Third New International Dictionary 978 (1986) ("adapted to the end designed or proposed: satisfactory in performance").
For definitions of "working" see The American Heritage Dictionary of the English Language 2057 (3d ed. 1992) ("[o]perating or functioning as required," "[sjufficient to allow action," and "[ajdequate for practical use"); The Random House Unabridged Dictionary 2189 (2d ed. 1993) ("operating; producing effects, results, etc.," and "adequate for usual or customary needs"); and Webster's Third New International Dictionary 2635 (1986) ("adequate to permit work to be done").
For definitions of "working order" see The Random House Unabridged Dictionary 2189 (2d ed. 1993) ("[T]he condition of a mechanism when it is functioning properly."); and Webster's Third New International Dictionary 2635 (1986) ("[A] condition of a machine in which it functions according to its nature and purpose.").

 Contrary to Justice Roggensack's dissent's assertion, we do not cite to Kroft and Vicknair in support of a conclusion that "the officers acted unreasonably" Justice Roggensack's dissent, ¶ 112. Rather, the cases are cited for the premise that courts look to function to determine whether there is a violation of a statute.

 "Proper" is defined as "[c]haracterized by appropriateness or suitability." The American Heritage Dictionary of the English Language 1452 (3d ed. 1992); see also Random House Unabridged Dictionary 1550 (2d ed. 1993) (defining "proper" as "adapted or appropriate to the purpose or circumstances; fit; suitable"); Webster's Third New International Dictionary 1817 (1986) ("adequate to the purpose").