STATE of Wisconsin,
Plaintiff-Respondent-Petitioner,

v.

Michael L. POPKE, Defendant-Appellant.

Supreme Court

*No. 2008AP446–CR. Oral argument March 6, 2009.*
*—Decided May 27, 2009.*

2009 WI 37

(Also reported in 765 N.W.2d 569.)

For the plaintiff-respondent-petitioner the cause was argued by *Mark A. Neuser*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

For the defendant-appellant there were briefs by *John M. Carroll, Aaron W. Schenk*, and the *John Miller Carroll Law Office*, Appleton, and oral argument by *John M. Carroll*.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished court of appeals' decision[1] that reversed the Waupaca County Circuit Court, Raymond S. Huber, Judge. The circuit court denied the defendant's motion to suppress evidence of operating a motor vehicle while intoxicated and operating with a prohibited alcohol concentration. The defendant asserted that any evidence should be suppressed because the police officer had neither probable cause nor reasonable suspicion to conduct the traffic stop. The defendant appealed the circuit court's decision, and the court of appeals reversed. The State petitioned for review. We accepted review and now reverse the court of appeals' decision.

---

[1] *State v. Popke,* No. 2008AP446–CR, unpublished slip op. (Wis. Ct. App. Aug. 7, 2008).

¶ 2. The single issue for review is whether this traffic stop violated the constitutional protections of the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution. We conclude that the police officer had probable cause to believe a traffic code violation had occurred, namely operating left of center, and also that the officer had reasonable suspicion to believe the defendant was operating a motor vehicle while intoxicated. Therefore, the traffic stop was constitutional, and thus, the circuit court correctly denied the defendant's motion to suppress evidence.

## I. BACKGROUND

¶ 3. The following facts are taken from the motion to suppress hearing. On July 8, 2007, at approximately 1:30 a.m., Sergeant Jeff Schlueter of the New London Police Department was sitting at the intersection of Beckert Road and Pershing Road in the city of New London.[2] The officer observed the defendant approaching from the west on Pershing Road. Once the defendant reached the intersection where the officer was sitting, the defendant turned left to go northbound on Cedarhurst Drive.

¶ 4. After the defendant turned onto Cedarhurst Drive, the officer began following the defendant, and the officer made the following observations: The defendant initially turned onto Cedarhurst Drive within the correct lane of traffic, but he then "swerved" into the left lane. Three-quarters of the defendant's vehicle was left of the center of the road. The center of the road was identified by a black strip of tar. The defendant then

---

[2] When traveling northbound on Beckert Road, Beckert Road becomes Cedarhurst Drive after crossing Pershing Road.

moved back into the proper northbound lane but "overcompensated" and as a result "almost hit the curb" on the right-hand side of the road. The defendant's vehicle then began to "fade back" towards the middle of the road and "nearly struck th[e] median."

¶ 5. The officer made these observations as the vehicle traveled approximately one block. These observations led the officer to activate his emergency lights and initiate a stop of the defendant's vehicle one block later. As a result of the traffic stop, the defendant was arrested and charged with third-offense operating a motor vehicle while intoxicated and operating with a prohibited alcohol concentration with a .255 blood alcohol concentration.

¶ 6. The defendant moved the circuit court to suppress any evidence that arose from the traffic stop because, he argued, the officer had neither probable cause that a traffic violation had occurred nor reasonable suspicion that criminal activity was afoot. The State, however, argued that the traffic stop was reasonable because the officer had probable cause that a traffic violation—driving left of center—had been committed.

¶ 7. The circuit court denied the defendant's motion to suppress finding that the officer had probable cause that a traffic code violation occurred when the defendant crossed the center of the road. The circuit court also commented that the officer could have had reasonable suspicion that the defendant was operating a motor vehicle while under the influence of alcohol, but the circuit court concluded that it did not need to decide that issue because it was "satisfied that the officer observed the violation of the Traffic Code and he was perfectly valid, appropriate in stopping the vehicle based on the observation of operating left of center." The defendant subsequently pled no contest to operating a

124

motor vehicle while intoxicated, and the circuit court sentenced him to 75 days in jail, fined him $3,491, and revoked his license for 36 months.

¶ 8. The defendant appealed and the court of appeals reversed the circuit court's decision. The court of appeals concluded that the officer did not have probable cause to believe a traffic violation had occurred. The court of appeals reasoned that the defendant's "conduct did not constitute driving down the wrong side of the road within the meaning of [Wis. Stat.] § 346.05" because the defendant crossed the center of the road only "momentarily." In addition, the court of appeals concluded that the officer did not have reasonable suspicion that a traffic or criminal code violation had occurred. The court of appeals reasoned that, under the totality of the circumstances, the State did not show "specific and articulable facts" that warranted this intrusion. The appellate court determined that it was not uncommon for vehicles to momentarily cross the center of the road, there was no testimony to establish how close the defendant came to striking the curb, and that no erratic driving was recounted by the officer. Therefore, the court of appeals concluded that the traffic stop did not comport with constitutional protections, and as a result, the motion to deny suppression was reversed and the judgment of conviction vacated. The State petitioned this court for review, which we accepted.

¶ 9. We reverse the court of appeals' decision because the police officer had probable cause to believe a traffic code violation had occurred, namely operating left of center, and the officer also had reasonable suspicion to believe the defendant was operating a motor vehicle while intoxicated. Therefore, the traffic stop was constitutional, and thus, the defendant's motion to suppress evidence should be denied.

125

## II. STANDARD OF REVIEW

¶ 10. Whether there is probable cause or reasonable suspicion to stop a vehicle is a question of constitutional fact. *State v. Mitchell,* 167 Wis. 2d 672, 684, 482 N.W.2d 364 (1992); *State v. Williams,* 2001 WI 21, ¶ 18, 241 Wis. 2d 631, 623 N.W.2d 106. A finding of constitutional fact consists of the circuit court's findings of historical fact, which we review under the "clearly erroneous standard," and the application of these historical facts to constitutional principles, which we review de novo. *Id.,* ¶¶ 18–19.

## III. ANALYSIS

¶ 11. "The temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment." *State v. Gaulrapp,* 207 Wis. 2d 600, 605, 558 N.W.2d 696 (Ct. App. 1996) (citing *Whren v. United States,* 517 U.S. 806, 809–10 (1996)). An automobile stop must not be unreasonable under the circumstances. *Gaulrapp,* 207 Wis. 2d at 605 (citing *Whren,* 517 U.S. at 810). " 'A traffic stop is generally reasonable if the officers have probable cause to believe that a traffic ·violation has occurred,' *id.,* or have grounds to reasonably suspect a violation has been or will be committed." *Gaulrapp,* 207 Wis. 2d at 605 (citing *Berkemer v. McCarty,* 468 U.S. 420, 439, (1984); *Terry v. Ohio,* 392 U.S. 1 (1968)).

A. Probable cause

¶ 12. The defendant argues that the officer did not have probable cause to believe a traffic violation

had occurred because the defendant's vehicle crossed the center of the road only momentarily. The State, on the other hand, argues that crossing over the center of the road is a violation of Wis. Stat. § 346.05(1) (2005–06),[3] and as a result, the officer had probable cause to believe a traffic violation had occurred. We agree with the State.

■

¶ 13. An officer may conduct a traffic stop when he or she has probable cause to believe a traffic violation has occurred. *Gaulrapp,* 207 Wis. 2d at 605; *see also Whren,* 517 U.S. at 809–10 (stating that a traffic stop is "reasonable where the police have probable cause to believe" there was a traffic violation, such as "No person shall turn any vehicle . . . without giving an appropriate signal" and "No person shall drive a vehicle . . . at a speed greater than is reasonable and prudent under the conditions"); 4 Wayne R. LaFave, *Search and Seizure* § 9.3(a) (4th ed. 2004) (concluding that probable cause for even the slightest traffic violation is legally sufficient to justify a traffic stop).

■■

¶ 14. Probable cause refers to the " 'quantum of evidence which would lead a reasonable police officer to believe' " that a traffic violation has occurred. *Johnson v. State,* 75 Wis. 2d 344, 348, 249 N.W.2d 593 (1977) (citation omitted). The evidence need not establish proof beyond a reasonable doubt or even that guilt is more probable than not, but rather, probable cause requires that " 'the information lead a reasonable officer to believe that guilt is more than a possibility.' " *Id.* at

[3] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated. The text of Wis. Stat. § 346.05 can be found in ¶ 15.

348–49 (citation omitted). In other words, probable cause exists when the officer has "reasonable grounds to believe that the person is committing or has committed a crime." *Id.* at 348 (quoting Wis. Stat. § 968.07(1)(d)).

■

¶ 15. The alleged traffic violation at issue here is Wis. Stat. § 346.05, "Vehicles to be driven on right side of roadway; exceptions," which prohibits a person from operating left of center. It provides as follows:

(1) Upon all roadways of sufficient width the operator of a vehicle shall drive on the right half of the roadway and in the right-hand lane of a 3–lane highway, except:

(a) When making an approach for a left turn under circumstances in which the rules relating to left turns require driving on the left half of the roadway; or

(b) When overtaking and passing under circumstances in which the rules relating to overtaking and passing permit or require driving on the left half of the roadway; or

(c) When the right half of the roadway is closed to traffic while under construction or repair; or

(d) When overtaking and passing pedestrians, animals or obstructions on the right half of the roadway; or

(e) When driving in a particular lane in accordance with signs or markers designating such lane for traffic moving in a particular direction or at designated speeds; or

(f) When the roadway has been designated and posted for one-way traffic, subject, however, to the rule stated in sub. (3) relative to slow moving vehicles.

¶ 16. In this case, the officer testified that he was sitting at a stop sign when the defendant turned left onto the road directly ahead of where the officer was sitting. The officer immediately began following the car and his view was not obstructed at any time. The defendant initially turned into the correct lane of traffic. However, the defendant subsequently "swerved" into the left lane of traffic and that resulted in the defendant's vehicle being three-quarters left of the center of the road, which was identified by a black strip of tar.

¶ 17. Based on this testimony, we conclude that the police officer had probable cause to believe a traffic code violation had occurred, namely operating left of center pursuant to Wis. Stat. § 346.05, and therefore, the traffic stop was reasonable. The officer watched as the defendant drove left of center, and as a result, the officer had probable cause to believe a traffic violation was being committed. Moreover, the circuit court concluded, and we agree, that none of the exceptions to this statute apply. *See* Wis. Stat. § 346.05(a)-(f). That is, there was nothing that required the defendant to drive left of center.

¶ 18. The defendant argues that he was not "driving" on the wrong side of the road given that he only "momentarily" crossed the center of the road. While "drive" is not defined in Wis. Stat. § 346.05, that word is defined elsewhere in chapter 346. *See* 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 46:6 (7th ed. 2007) (asserting that identical terms generally have the same meaning whereas unlike terms generally have different meanings). Wisconsin Stat. § 346.63(3)(a) provides: " 'Drive' means the exercise of physical control over the speed and direction

of a motor vehicle while it is in motion." The defendant's actions are consistent with this definition, and thus, he was driving left of the center of the road in violation of Wis. Stat. § 346.05(1). The State posits an interesting question with regard to the defendant's claim that he was not driving; if the defendant was not driving in the left lane, what was he doing? This question itself reflects the inherent flaw with the defendant's argument.

¶ 19. The defendant argues that this interpretation will lead to a situation whereby "thousands of drivers" could be pulled over every day "if one tread of tire moves over the centerline for even one millisecond." The United States Supreme Court responded to a similar argument in *Whren.* In that case, the defendants similarly asserted "that the 'multitude of applicable traffic and equipment regulations' is so large and so difficult to obey perfectly that virtually everyone is guilty of violation, permitting the police to single out almost whomever they wish for a stop." The Court appropriately responded:

> But we are aware of no principle that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement. And even if we could identify such exorbitant codes, we do not know by what standard (or what right) we would decide, as petitioners would have us do, which particular provisions are sufficiently important to merit enforcement.
>
> For the run-of-the-mine case, which this surely is, we think there is no realistic alternative to the traditional common-law rule that probable cause justifies a search and seizure.

*Whren,* 517 U.S. at 818–19.

130

¶ 20. The defendant also argues, as he did at the circuit court, that the officer in this case was not in position to observe the defendant's "brief swerve" into the wrong lane of traffic. The circuit court, however, concluded that the officer would have been in position to make the requisite observations because the officer was directly across the street and nothing blocked his view. We review the circuit court's findings of fact under the "clearly erroneous standard." Therefore, "we are bound not to upset the trial court's findings of historical or evidentiary fact unless they are contrary to the great weight and clear preponderance of the evidence." *State v. Turner,* 136 Wis. 2d 333, 343, 401 N.W.2d 827 (1987). We find no reason to conclude that the facts as found by the circuit court are contrary to the great weight and clear preponderance of the evidence. The circuit court considered the defendant's photographs and heard testimony from the officer and the defendant who each described the area in question. Despite the defendant's challenges, the circuit court concluded that the officer could make the observations in question, and we conclude that its findings are on firm footing.

¶ 21. Accordingly, the traffic stop was reasonable because the officer had probable cause to believe a traffic violation had occurred, namely operating left of center.

B. Reasonable suspicion

¶ 22. In addition to the officer having probable cause that a traffic violation had occurred, the officer also had reasonable suspicion the defendant was operating a motor vehicle while intoxicated. The defendant, however, asserts there is too little evidence to establish such reasonable suspicion, but we agree with the State

131

that under the totality of the circumstances, the officer did have reasonable suspicion to conduct an investigatory stop of the vehicle.

¶ 23. Even if no probable cause existed, a police officer may still conduct a traffic stop when, under the totality of the circumstances, he or she has grounds to reasonably suspect that a crime or traffic violation has been or will be committed. *Gaulrapp,* 207 Wis. 2d at 605. The officer " 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the intrusion of the stop." *State v. Post,* 2007 WI 60, ¶ 10, 301 Wis. 2d 1, 733 N.W.2d 634 (citation omitted). " 'The crucial question is whether the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime.' " *Id.,* ¶ 13 (citation omitted). An "officer's inchoate and unparticularized suspicion or hunch," however, will not give rise to reasonable suspicion. *Id.,* ¶ 10 (citations and quotations omitted).

¶ 24. In *Post,* we concluded that the officer had reasonable suspicion to believe the defendant was operating a motor vehicle while intoxicated, but we concluded that weaving within a single lane of traffic, by itself, does not establish reasonable suspicion. *Id.,* ¶¶ 26–27. The officer, in *Post,* observed the defendant driving partially in an unmarked parking lane at 9:30 p.m. *Id.,* ¶ 4. The officer began following the defendant and observed the defendant's car traveling in a smooth "S-type" pattern with the vehicle coming within six to eight feet of the curb when it moved towards the right part of the parking lane and then coming within 12 inches of the center line when it moved back to the left.

132

*Id.,* ¶ 5. This deviation resulted in the defendant's car moving approximately ten feet from right to left within the lane of traffic. *Id.* The officer testified that the pattern was repeated several times over the course of two blocks, but the "movement was neither erratic nor jerky, and the car did not come close to hitting any other vehicles or to hitting the curb at the edge of the parking lane." *Id.*

¶ 25. We concluded that while " 'any one of these facts, standing alone, might well be insufficient' " for reasonable suspicion, when "such facts accumulate, and 'as they accumulate, reasonable inferences about the cumulative effect can be drawn.' " *Id.,* ¶ 37 (citation omitted). We determined that under the totality of the circumstances, there were "specific and articulable facts, which taken together with rational inferences from those facts, g[a]ve rise to the reasonable suspicion necessary for an investigative stop." *Id.* The defendant "was weaving across the travel and parking lanes, that the weaving created a discernible S-type pattern, that Post's vehicle was [driving] in[] the parking lane, and that the incident took place at night." *Id.*

■■■

¶ 26. In the case at hand, the officer had reasonable suspicion that the defendant was operating a motor vehicle while intoxicated. Similar to the specific and articulable facts observed by the officer in *Post,* the officer in this case made the following observations over the course of approximately one block at 1:30 a.m.: The defendant was driving with three-quarters of the vehicle left of the center of the road; the vehicle then moved back into the proper lane but almost hit the curb; the defendant's vehicle then faded back towards the middle of the road and nearly struck the median. Under the totality of the circumstances, we conclude

that the accumulation of these facts gives rise to a reasonable suspicion that the defendant was operating a motor vehicle while intoxicated.

¶ 27. The defendant, relying on *Post,* argues that the officer's observations did not support reasonable suspicion because the observations were too few and not detailed enough. The defendant's argument is unpersuasive because under our totality of the circumstances approach, there was ample proof adduced to justify reasonable suspicion. Therefore, the potential inadequacies set forth by the defendant do not undermine the totality of the other facts that support reasonable suspicion. Moreover, the facts of this case support a reasonable suspicion determination even more than those facts from *Post,* given that in this case the officer observed a traffic code violation, the events took place at 1:30 a.m., the events occurred within one block, and there was erratic driving. As a result, the defendant's assertions and his reliance on *Post* do not support his argument.

## IV. CONCLUSION

¶ 28. We conclude that the police officer had probable cause to believe a traffic code violation had occurred, namely operating left of center, and also that the officer had reasonable suspicion to believe the defendant was operating a motor vehicle while intoxicated. Therefore, the traffic stop was constitutional, and thus, the defendant's motion to suppress evidence should be denied.

*By the Court.*—The decision of the court of appeals is reversed.