# COURT OF APPEALS
# DECISION
# DATED AND FILED

## October 17, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1148-CR**

Cir. Ct. No. **2018CF1618**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

VARICK C. CHOICE,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Varick C. Choice appeals a judgment of conviction entered after he pled guilty to being a felon in possession of a firearm and to possessing marijuana. The question on appeal is whether the circuit court properly denied his motion to suppress evidence found during a traffic stop. Choice asserts that the circuit court erred and that suppression was required because police detained him without reasonable suspicion that he was violating any law. We conclude that police had reasonable suspicion to detain Choice because he failed to stop his motor vehicle as required before entering a highway from a point of access other than another highway. Therefore, we affirm.

## BACKGROUND

¶2 According to the criminal complaint, police officers on patrol in the City of Milwaukee on April 1, 2018, stopped a Ford Expedition on West Atkinson Avenue for suspected traffic code violations. The driver, subsequently identified as Choice, was not cooperative with the officers. During the ensuing struggle, the officers saw a firearm in his car. Officers eventually subdued Choice, searched his person, and found twenty-one grams of a plant-like substance. The substance tested positive for tetrahydrocannabinols. Court records revealed that Choice had previously been convicted of a felony. The State charged him in the instant matter with being a felon in possession of a firearm, possession with intent to deliver marijuana, and resisting an officer.

¶3 Choice moved to suppress the evidence that officers found during the traffic stop. The circuit court conducted a hearing at which Milwaukee Police Officer Jack Kelly was the only witness.

¶4 Kelly testified that on April 1, 2018, he and another officer were in a squad car near a six-way Milwaukee intersection. Kelly said that he observed a

Ford Expedition turn from North King Drive into a paved area near the intersection, and he identified five exhibits as images accurately depicting the area.

¶5      The exhibits show that the paved area is triangle-shaped, with its base abutting a grassy patch and its point ending in the intersection of North King Drive, West Atkinson Avenue, and West Keefe Avenue. A sidewalk borders each of the two legs of the triangle, one leg of which runs along North King Drive and the other along West Atkinson Avenue. Two lanes with curb cuts at both ends cross the area to connect North King Drive and West Atkinson Avenue. A small building stands between the two lanes. A pole in front of one side of the building holds two signs that face approaching traffic on North King Drive. One sign is red and white and says "Do Not Enter"; a black-and-white sign directly underneath says "Except For Buses." Three additional signs are affixed to the building on the side facing North King Drive. One sign says: "Private Property Unauthorized Vehicles Will Be Towed Away At Owners Expense[.] Milwaukee County Transit Authority." Another sign says: "Private Property No Trespassing." The last sign says: "No Parking Any Time," and has an arrow that points both left and right. A three-walled plastic bus shelter stands next to the building on the side nearest to West Atkinson Avenue.

¶6      Kelly testified that the paved area is a "bus turn." He explained that motorists travelling southbound on North King Drive who want to turn onto westbound West Atkinson Avenue are required to drive up to the traffic signal at the intersection and turn right. Buses, however, use the paved area to cross between North King Drive and West Atkinson Avenue because the turn at the six-way intersection is too sharp for buses to navigate.

¶7    Kelly next testified that his partner was wearing a body camera in their squad car on April 1, 2018, and the circuit court received the body camera video as an exhibit. The State played portions of the recording in the courtroom while Kelly testified that it accurately depicted his observations of a Ford Expedition that turned off North King Drive into the right—or west-side—passageway in front of signs warning "Do Not Enter Except For Buses." The Ford then drove to the end of the passage and crossed the sidewalk into West Atkinson Avenue without stopping.

¶8    Kelly testified that the Ford was required to stop before entering West Atkinson Avenue, so he activated his squad car's emergency lights and detained the Ford.[1] Choice was the driver. The detention led to the discovery of various evidentiary items.

¶9    The circuit court credited Kelly's testimony, which was supported by the body camera footage. The court found that Choice turned off North King Drive in front of the "Do Not Enter Except for Buses" signs and drove into the paved area. The court also found that Choice proceeded down the right-side passageway, then crossed the sidewalk and drove onto West Atkinson Avenue without stopping. Further, the court found that governing traffic laws required Choice to stop his vehicle before crossing the sidewalk to enter West Atkinson Avenue because he was emerging from an alley. The court concluded that, because Choice failed to stop as required, Kelly had reasonable suspicion to detain Choice. The court therefore denied Choice's suppression motion.

---

[1] Kelly testified that he observed other potential traffic violations in addition to the failure to stop. Those alleged violations are not at issue on this appeal.

¶10 Choice resolved the charges against him with a plea agreement. He now appeals, challenging the order denying his suppression motion.[2]

## DISCUSSION

¶11 A police officer may detain a motorist when, under the totality of the circumstances, the officer "has grounds to reasonably suspect that a crime or traffic violation has been or will be committed." ***State v. Popke***, 2009 WI 37, ¶23, 317 Wis. 2d 118, 765 N.W.2d 569. Reasonable suspicion requires an officer to have specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant the intrusion of the detention. *See **id.*** Whether reasonable suspicion exists is a question of constitutional fact. *See **id.***, ¶10. We uphold the circuit court's factual findings unless those findings are clearly erroneous, but we independently apply those facts to constitutional principles. *See **id.***

¶12 Pursuant to WIS. STAT. § 346.47(1), a motorist must stop his or her vehicle before crossing a sidewalk area when the motorist is emerging from an alley or is about to enter a highway from a point of access other than another highway. Specifically, the statute provides, in pertinent part:

> The operator of a vehicle emerging from an alley or about to cross or enter a highway from any point of access other than another highway shall stop such vehicle immediately prior to moving on to the sidewalk or on to the sidewalk area extending across the path of such vehicle[.]

***Id.*** As relevant here, "'[h]ighway' means all public ways and thoroughfares and bridges on the same. It includes the entire width between the boundary lines of

---

[2] Pursuant to WIS. STAT. § 971.31(10) (2021-22), a circuit court order denying a suppression motion may be reviewed on appeal notwithstanding the defendant's guilty plea. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

every way open to the use of the public as a matter of right for the purposes of vehicular travel." *See* WIS. STAT. §§ 340.01(22), 346.01(1).[3]

¶13    The parties agree that Choice crossed a sidewalk and drove onto West Atkinson Avenue without stopping.  The parties also agree that West Atkinson Avenue is a "highway" within the meaning of WIS. STAT. § 340.01(22) and WIS. STAT. § 346.47(1).  The parties dispute only whether Choice was required to stop before driving across the sidewalk onto West Atkinson Avenue.

¶14    The circuit court agreed with the State, concluding that WIS. STAT. § 346.47(1) required Choice to stop before crossing the sidewalk onto West Atkinson Avenue because he was "emerging from an alley."  *See id.*  An "alley" is defined in WIS. STAT. § 340.01(2) as "every highway within the corporate limits of a city ... primarily intended to provide access to the rear of property fronting upon another highway and not for the use of through traffic."  The court, however, did not make findings to support its conclusion that the area in which Choice drove satisfied the statutory definition of an "alley."  Moreover, the testimony and exhibits in this case show that the building in the paved area lacked a doorway—or any other point of access—on the side where Choice drove.  Accordingly, we agree with Choice that he did not emerge from an "alley," as defined in § 340.01(2), when he crossed the sidewalk to West Atkinson Avenue.

¶15    We will affirm a circuit court's ruling, however, if the circuit court reached the correct decision, even if we disagree with the circuit court's reasoning. *See State v. Baudhuin*, 141 Wis. 2d 642, 648, 416 N.W.2d 60 (1987).  Here, we are

---

[3] For purposes of WIS. STAT. ch. 346, "highway" includes not only the definition set forth in WIS. STAT. § 340.01(22), but also certain private roads within a manufactured and mobile home community.  *See* WIS. STAT. § 346.01(1m); *see also* WIS. STAT. § 349.03(5).  The definition in § 346.01(1m) is not relevant to the instant matter.

satisfied that the circuit court correctly denied the suppression motion. We conclude that Choice entered West Atkinson Avenue from a "point of access other than another highway," *see* WIS. STAT. § 346.47(1), and therefore he was required to stop before driving across the sidewalk to enter the avenue, *see **id.***

¶16 The record shows that the area from which Choice drove onto West Atkinson Avenue was not "open to the use of the public as a matter of right for the purposes of vehicular travel." *See* WIS. STAT. § 340.01(22). The area had pavement, a building, and a plastic bus stop shelter, and the area had sidewalks that enclosed it and separated it from North King Drive and West Atkinson Avenue. Two signs posted in the area cautioned: "Do not Enter Except for Buses." A third sign prohibited entry with the warning: "Private Property No Trespassing." A fourth signed prohibited parking and a fifth sign barred motorists by warning: "Private Property Unauthorized Vehicles Will Be Towed Away[.] Milwaukee County Transit System." The paved area was thus clearly marked as a bus stop that was not open to public use for vehicular travel. Accordingly, the paved area from which Choice crossed the sidewalk into West Atkinson Avenue was "a point of access other than another highway." *See* WIS. STAT. § 346.47(1).

¶17 Choice was required to stop before driving across the sidewalk and entering West Atkinson Avenue—a highway—because he was entering from a point of access other than another highway. *See **id.*** Kelly observed Choice drive across the sidewalk and enter the highway without stopping. The observation supported a reasonable suspicion that Choice had violated a traffic law. *See **id.*** Because reasonable suspicion justified the police in detaining Choice, the circuit court properly denied his motion to suppress the evidence found incident to the detention. For all the foregoing reasons, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.