# COURT OF APPEALS
## DECISION
## DATED AND FILED

## January 31, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1053-CR**

Cir. Ct. No. **2019CT434**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

KEVIN A. TERRY,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Fond du Lac County: PAUL G. CZISNY, Judge. *Affirmed.*

¶1 GUNDRUM, P.J.[1] Kevin A. Terry appeals from a judgment of conviction entered by the circuit court. He contends the sheriff's deputy who cited

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

him for a defective taillamp and arrested him for operating a motor vehicle while intoxicated (OWI), second offense, lacked reasonable suspicion to conduct the traffic stop. As a result, he contends the circuit court erred in denying his motion to suppress all evidence flowing from the stop.[2] For the following reasons, we conclude the court did not err, and we affirm.

## Background

¶2 After being criminally charged, Terry filed a motion to suppress, asserting the arresting deputy did not have reasonable suspicion to conduct a traffic stop. The deputy was the only witness to testify at the suppression hearing, and his relevant testimony is as follows.

¶3 Around 10:56 p.m. on August 10, 2019, the deputy observed a vehicle whose "upper left taillight area appeared to [have] a white light coming from [its] upper portion" when the driver activated the vehicle's brakes. The vehicle, which was being driven by Terry, turned right at a stop sign and then turned into a gas station, parking at a gas pump.

¶4 The deputy confirmed that while following the vehicle, he "had observed a white light coming from [the left] taillamp." He conducted a traffic stop on Terry at the gas station, and as he approached Terry's vehicle, he observed an "approximately 3-inch-by-3-inch crack or hole in the taillight, but it was covered by like a light red transparent tape."

---

[2] The Honorable Dale L. English presiding.

¶5    The State played the squad video for the court. Watching the video and testifying to what he was seeing, the deputy stated, "You can kind of see right there there's a difference between the two stop lamps. Sometimes video quality is not hundred percent what you can see in real eye. But there was definitely a difference. It appeared white as I was behind it on that top left corner." The deputy further stated that at the 22:55:40 point on the video, while driving behind Terry's vehicle, he couldn't see the tape covering. "When I was behind it it just appeared white."

¶6    On cross-examination, relevant engagement between defense counsel and the deputy went as follows:

> [Counsel:] Now, the statute under which you believe the violation was occurring does not indicate specifically regarding variations in color of the stop light or of the lights, correct?
>
> [Deputy:] … It has to be in proper working condition emitting red.
>
> [Counsel:] Well, you would agree they're both red, correct?
>
> [Deputy:] It appeared white.
>
> [Counsel:] But you'd agree that both lights are emitting red? Maybe different shades of red, but they're both emitting red?
>
> [Deputy:] To me, it appeared white in the upper left-hand corner.

The deputy again indicated that the video recording did not show as clear of a visual as what he had observed when he was directly behind the vehicle, adding that when he was "behind the vehicle, like what you're actually seeing it looked like a white light to me." The deputy reiterated that he observed a difference between the left side and right side taillamps when Terry's "blinker" turned off

and testified that "it appeared that the taillight was cracked or broken because of the white light."

¶7 The circuit court had the State play the video again from the beginning, stopping at 22:55:29. Upon the State's questioning, the deputy testified, "Right now it looks pinkish. But like I said, there's definite difference in the two." The deputy confirmed that "in person … that was emitting more of a white tinted light than a pinkish tone."

¶8 Following the presentation of testimony, the circuit court had the State play the video two more times. The last time the court viewed it, it did so on the State's laptop computer "to see if there's any difference." The court noted that "the image is sharper on the computer, a little bit more blurred on the, but not a whole lot, on the screen." The court further stated

> [t]his isn't my first suppression motion hearing which involved testimony and a squad video. And it's not uncommon to have testimony and the squad video not entirely correspond. Or, for example, the officer will say, well, what I saw was this and it's not clearly reflected in the video, based on video quality, et cetera.

The court stated that "[i]t is clear that the two taillights have different colors … pretty much throughout. But it does have a pink tinge." The court further found that at the 22:55:39 point in the video, "just before the turn was about to take place—the squad is closer to the Jeep. And it's clear at least from that vantage point that the left taillight is emitting white light, not a red light." The court added, "So I think to that extent the video was consistent with the deputy's observation that night." The court denied Terry's suppression motion, and Terry ultimately pled to prohibited alcohol concentration (PAC), second offense and was sentenced. He now appeals.

4

*Discussion*

¶9      As our supreme court has stated, "reasonable suspicion that a traffic law has been or is being violated is sufficient to justify all traffic stops." ***State v. Houghton***, 2015 WI 79, ¶30, 364 Wis. 2d 234, 868 N.W.2d 143.  On review of a circuit court's ruling from a suppression hearing, we review the court's factual determinations for clear error, but whether the facts meet the constitutional standard—here, reasonable suspicion—is a question of law we review de novo. ***State v. Popke***, 2009 WI 37, ¶10, 317 Wis. 2d 118, 765 N.W.2d 569.

¶10      Throughout most of his appellate briefing, Terry insists the video played at the suppression hearing shows only red light emitting from his left taillamp.  Based upon this, he asserts that "[b]ecause [his] vehicle was emitting a red light from both his left and right taillight, as required by [WIS. STAT. §] 347.13(1), his taillights were in 'good working order,'" and therefore, the deputy did not have a lawful basis to conduct the traffic stop.  Again relying on the video, he also claims the circuit court's finding of fact that Terry's taillight was illuminating white, and not red, is clearly erroneous.

¶11      Yet, Terry admits in his briefing that "it is possible that the [d]eputy was able to see a small white light emit[ing] from the upper portion of the left taillight that is not otherwise visible on the video."  He further states that "[e]ven if [the deputy's] testimony is credible that he saw a white light emitting *from a small portion of a taillight*, that does not make the entire taillight white."  He later again states that "the taillight may have been emitting a small white light."  He waves this white-light observation off, however, on the basis that "it does not change the fact that the video clearly shows that the taillight was emitting a red light" and "was functioning in good working order."  Essentially, Terry appears to be saying

5

that even if the taillight emitted some white light, as the deputy testified, the stop was unlawful because it was also emitting some red light. The statutes are not on Terry's side.

¶12   WISCONSIN STAT. § 347.07(2) appears to be directly on point. It states: "Except as provided in sub. (3) [relating to motorcycles, and not applicable here], or as otherwise expressly authorized or required by this chapter, no person shall operate any vehicle … on a highway which has displayed thereon: … (b) *Any color of light other than red on the rear* …." (Emphasis added.) In its response brief, the State directs us to WIS. STAT. § 347.26(4) as providing one instance of an exception that is "expressly authorized or required by" WIS. STAT. ch. 347. That statutory provision permits "white or amber" "back-up lamps" on the rear of the vehicle, for when the vehicle "is about to be or is being driven backward." This exception does not apply here. Another exception the State directs us to is found in WIS. STAT. § 347.15(2) and allows for "a flashing red or amber light visible to the rear" for "direction signal lamps." This exception also does not apply here. In his reply brief, Terry directs us to no other exceptions that might be relevant to this case. Thus, we are left with the plain language of § 347.07(2). If it appeared to the deputy prior to the traffic stop that some white light was emitting from the left taillamp, he had reasonable suspicion, indeed probable cause, to believe Terry was operating his vehicle in violation of § 347.07(2) and conduct the traffic stop to investigate further. While § 347.07(2) may or may not have been the statute the deputy focused on when he conducted the traffic stop, the stop was nonetheless lawful "[a]s long as there was an objectively lawful basis" to conduct the stop, *see **State v. Rose***, 2018 WI App 5, ¶28, 379 Wis. 2d 664, 907 N.W.2d 463; *see also **State v. Baudhuin***, 141 Wis. 2d 642, 649-51, 416 N.W.2d 60 (1987), and here there was.

¶13    Terry's appeal teeters on his contention that the circuit court's factual finding that the officer observed white light emitting from the left taillight was clearly erroneous. He bases his contention on the squad car video that was admitted into evidence at the suppression hearing. Several things go against Terry in this regard. First, as previously discussed, Terry effectively concedes that the deputy may have observed some white light emitting from the taillamp. Second, the circuit court itself carefully reviewed the video, multiple times, and observed Terry's left taillamp to have been emitting white light. Third, the court found the deputy's testimony credible, noting that it is not unusual to observe things a bit differently in person than on a video recording; at the hearing, the court even noted the difference in imaging quality on the State's laptop computer versus the screen on which the court had originally viewed the video. Relatedly, while it was only after the deputy had turned on his emergency lights and conducted the stop—and therefore it could not have provided a foundation for the stop—the undisputed fact that the deputy observed tape covering Terry's left taillamp could only support the deputy's credibility in the court's eyes, as this observation was contemporaneous with the stop and supports the deputy's testimony that something was amiss with that taillamp and he observed white light emitting from it, which led to the stop.[3]

¶14    Lastly, we have carefully reviewed the video ourselves and note that the left lamp appears lighter in color than the right lamp, and the color of the left lamp could be fairly described at times as pink and at times even as white. Also,

---

[3] Additionally, review of the squad video/audio shows that as the deputy approached the vehicle, he immediately told Terry he pulled him over because of his taillamp. The record indicates that this portion of the video/audio was played for the court.

as Terry approaches and stops at the stop sign, before turning right, his taillamps activate and his vehicle is canted in a rightward direction. As Terry completes his stop, the left lamp actually appears to this court as amber.[4]

¶15    Terry attempts to convince us the question here is whether or not the left taillamp was in "good working order," which is a legal requirement of WIS. STAT. § 347.13. While it is true the deputy's traffic stop would have been lawfully justified if the taillamp was not in good working order, that is not the end of the story. The question before us is whether the deputy reasonably suspected Terry violated *some* legal requirement or prohibition, *see Popke*, 317 Wis. 2d 118, ¶14, whether that be because the taillamp was not in good working order or because he was violating some other legal requirement or prohibition.

¶16    As noted, the circuit court pointed out some difference in the video quality between the screen on which the court first viewed the video and the State's laptop computer on which it also viewed the video. This court's computer system and screen could be projecting to this court yet a little different video appearance than what the circuit court saw on either of the screens on which it viewed the video. Furthermore, as the circuit court correctly pointed out, it is not unusual for things to appear a bit different on video than in person.

¶17    As the appellant, Terry bears the burden of demonstrating that the circuit court erred. *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381. At the end of the day, a key question we must answer here

---

[4] It is possible that the street light in the background is affecting the appearance of the lamp at that particular moment, but whether that is the cause of the amber appearance is unknown.

is not whether this court or the circuit court viewed *on the video* that Terry's vehicle was displaying "[a]ny color of light other than red on the rear" moments before the traffic stop, but whether the circuit court clearly erred in its factual finding that the deputy observed some "color of light other than red on the rear" of Terry's vehicle (other than with the turn signal/"blinker"). *See* WIS. STAT. § 347.07(2). The deputy testified that while on the video the left taillamp did appear to have a "pinkish tone," he insisted that "in person," it appeared "white." The circuit court concluded that when it viewed the video the left taillamp at one point had "a pink tinge" and at another point—apparently the point at which the left taillamp appeared more amber to this court—the circuit court viewed the left taillamp as "emitting white light, not a red light." Having viewed the video ourselves, repeatedly and freezing/stopping it at key points, Terry has not convinced us the circuit court clearly erred in essentially finding that while following Terry's vehicle in person just moments before the stop, the deputy observed Terry's left taillamp to be "display[ing]" a "color of light other than red." *See* § 347.07(2). If the left taillamp was in fact displaying a color of light other than red, that would be a violation of § 347.07(2). We conclude the deputy had at least reasonable suspicion that Terry was in violation of this law, and the circuit court did not err in denying Terry's suppression motion.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

9