COURT OF APPEALS
DECISION
DATED AND FILED

February 25, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1764**

Cir. Ct. No. **2021TR7591**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

GLEN MICHAEL BRAUN,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed*.

¶1 GILL, J.[1] Glen Michael Braun appeals from a judgment convicting him of operating a motor vehicle while intoxicated (OWI), as a first offense.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

Braun argues that the circuit court erred by denying his motion to suppress evidence. We reject Braun's arguments and affirm.

**BACKGROUND**

¶2 The State charged Braun with OWI, as a first offense. *See* WIS. STAT. §§ 346.63(1), 346.65(2)(am)1. Braun filed a motion to suppress, arguing that law enforcement lacked the requisite reasonable suspicion to initiate the traffic stop that led to his arrest. Braun requested that the circuit court suppress all evidence obtained subsequent to the unlawful seizure.

¶3 Wisconsin State Trooper Thomas LaCourt-Baker testified at the suppression hearing. LaCourt-Baker stated that at 1:57 a.m. on the morning of the traffic stop, he was conducting speed radar enforcement in a median on Interstate 41, around one-quarter mile north of the Highway 441 exit. At that moment, he "observed a vehicle approaching … at approximately the speed limit"—seventy miles per hour—traveling southbound on Interstate 41. As the vehicle "came within viewing distance" of LaCourt-Baker's patrol car, "it had a dramatic reduction in speed" to approximately forty-five miles per hour and eventually proceeded to enter the exit for Highway 441. LaCourt-Baker testified that, based on his experience, the "dramatic reduction of speed, especially on the interstate with no other traffic or other factors that would lead to a vehicle slowing down," was "a reaction to police presence," which led him to suspect "criminal activity" was afoot. He further stated that the Highway 441 exit was far enough away from the location where the vehicle began slowing down "where it wouldn't be realistic with no traffic to already have been slowing."

¶4 Trooper LaCourt-Baker testified that he began following the vehicle "at a safe" distance once it passed his patrol car. Once behind the vehicle,

LaCourt-Baker "was unable to read the … [rear] license plate" because "[i]t had peeling paint." LaCourt-Baker also observed that the rear license plate's registration decal delineating the registration year was "improperly placed," but he conceded that he could tell from the decal that the registration was not expired. According to LaCourt-Baker, the decal was placed "along the side of the license plate" instead of in the "bottom [right] corner" as required by law.

¶5 Braun, who was later determined to be the driver of the vehicle, introduced a photograph, which the circuit court admitted into evidence over the State's objection, of his vehicle's rear license plate taken during the daytime. Trooper LaCourt-Baker testified that the rear license plate depicted in the photograph matched the rear license plate he observed on the vehicle. The court commented that the license plate "seems pretty easy to read" based on the photograph. In response, LaCourt-Baker stated that "if you look kind of on the right half [of the rear license plate in the photograph] you can see where the paint is peeling off.… [B]ecause of the … peeling paint it was illegible." When questioned further, LaCourt-Baker stated that there was also peeling paint on the left half of the license plate, and he explained that the peeling paint was the "reflective material that gives you the ability to see it at night."

¶6 Based on his observations, Trooper LaCourt-Baker initiated a traffic stop on the Highway 441 exit ramp. LaCourt-Baker testified that he was able to read the vehicle's rear license plate once he came within approximately forty-five feet of the vehicle and stopped his patrol car.[2]

---

[2] There is little information in the record regarding what occurred after Trooper LaCourt-Baker initiated the traffic stop, and Braun does not raise any challenges on appeal aside from the constitutionality of the initial seizure.

¶7      The circuit court issued an oral ruling denying Braun's motion to suppress. The court found that Braun's speed was a proper consideration in terms of why Trooper LaCourt-Baker decided to follow the vehicle. Specifically, the court stated that it was "proper" for LaCourt-Baker "to say, well, I'm not going to stop the vehicle because of that, or rely on that in any part other than as it was," but "it is what drew [his] attention to that vehicle to start following" it. The court further found that the misplaced registration decal delineating the registration year did not provide a constitutional basis for the traffic stop. *See* WIS. STAT. § 341.15(3)(a).[3]

¶8      However, the circuit court found that the illegible rear license plate provided a constitutional basis for the traffic stop. The court credited Trooper LaCourt-Baker's testimony that he could not read the license plate until he was within forty-five feet of Braun's vehicle due to the peeling reflective paint. Under WIS. STAT. § 341.15(2), license plates "shall at all times be maintained in a legible condition and shall be so displayed that they can be readily and distinctly seen and read." A police officer "may require the operator of any vehicle on which plates are not properly displayed to display such plates as required by this section." *Id.* The court found that because Braun's rear license plate was in such a condition that "it was a challenge to read at a certain distance," the plate was not "maintained in a legible condition" and was not "so displayed that [it could] be readily and distinctly seen and read." *See id.*

---

[3] WISCONSIN STAT. § 341.15(3)(a) provides, in relevant part, that a person may be required to forfeit not more than $200 if he or she "operates a vehicle for which a current registration plate, insert tag, decal or other evidence of registration has been issued without such plate, tag, decal or other evidence of registration being attached to the vehicle."

¶9     The circuit court later memorialized its decision in a written order. Subsequently, the court adjudicated Braun guilty of the offense charged, based on stipulated facts. This appeal follows.[4]

## DISCUSSION

¶10     The Fourth Amendment to the United States Constitution provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV; *State v. VanBeek*, 2021 WI 51, ¶23, 397 Wis. 2d 311, 960 N.W.2d 32 ("The Wisconsin Constitution contains nearly identical protections, WIS. CONST. art. I, § 11, which we have interpreted consistent with its federal counterpart."). "The '[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons within the meaning' of the Fourth Amendment." *State v. Houghton*, 2015 WI 79, ¶31, 364 Wis. 2d 234, 868 N.W.2d 143 (alteration in original; citation omitted). As relevant here, "reasonable suspicion that a traffic law has been or is being violated is sufficient to justify all traffic stops." *Id.*, ¶30. Reasonable suspicion means that "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Id.*, ¶21 (citation omitted).

¶11     Whether a defendant's rights under the Fourth Amendment have been violated "is a question of constitutional fact subject to a two-step standard of

---

[4] The circuit court stayed the judgment pending the outcome of this appeal.

5

review." ***Houghton***, 364 Wis. 2d 234, ¶18.  First, we uphold the circuit court's findings of fact unless they are clearly erroneous.  ***Id.***  We then independently apply constitutional principles to those facts.  ***Id.***

¶12    This appeal also requires us to interpret and apply statutes. "[S]tatutory interpretation 'begins with the language of the statute.  If the meaning of the statute is plain, we ordinarily stop the inquiry.'"  ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted).   "Statutory language is given its common, ordinary, and accepted meaning …."  ***Id.***  We also interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes."  ***Id.***, ¶46.  "Statutory interpretation and the application of a statute to a given set of facts are questions of law that we review de novo."  ***State v. Shoeder***, 2019 WI App 60, ¶6, 389 Wis. 2d 244, 936 N.W.2d 172.

¶13    Because the issue is dispositive, we focus our analysis on whether Trooper LaCourt-Baker had reasonable suspicion to seize Braun because LaCourt-Baker suspected him of violating WIS. STAT. § 341.15(2).[5]  Braun does not dispute that a violation of § 341.15(2) can form the basis for a constitutional traffic stop supported by reasonable suspicion—i.e., he does not dispute that a violation of § 341.15(2) is a "traffic law."  *See **Houghton***, 364 Wis. 2d 234, ¶30. Rather, Braun challenges the circuit court's finding that LaCourt-Baker could not

---

[5] We do not address the State's remaining arguments in support of the legality of the traffic stop, including that Trooper LaCourt-Baker had reasonable suspicion that Braun was violating WIS. STAT. § 341.15(1m)(a) (dictating the placement of registration decals). *See **Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (stating that we need not address alternative arguments when one is dispositive).

6

read the rear license plate while traveling "at a safe" distance or that he could not read the license plate until he was within forty-five feet of the vehicle. He argues that although "the white paint was peeled away, the black paint on the actual number was, largely, intact, and the bare-metal, underneath the white paint, would also be reflective so the black numbers would still stand out against the background of the plate." The court's findings are not clearly erroneous. The photograph, coupled with LaCourt-Baker's testimony, provided a reasonable basis for the court to find that LaCourt-Baker's testimony was credible and that LaCourt-Baker could not see the rear license plate until he was within forty-five feet of Braun's vehicle, due to the peeling reflective material. *See State v. Popke*, 2009 WI 37, ¶20, 317 Wis. 2d 118, 765 N.W.2d 569.

¶14 In addition, Braun argues, essentially, that he did not, in fact, violate WIS. STAT. § 341.15(2) because Trooper LaCourt-Baker could eventually read the rear license plate once he was within forty-five feet of Braun's vehicle. Braun contends that § 341.15(2) "does not require a person to maintain or display plates so that they are legible at any distance." In other words, Braun argues that his rear license plate was "maintained in a legible condition" and "so displayed that [it could] be readily and distinctly seen and read." *See id.*

¶15 The determinative question, however, is not whether Braun definitively, or even likely, violated WIS. STAT. § 341.15(2). Instead, the question is whether Trooper LaCourt-Baker had the requisite reasonable suspicion to believe that § 341.15(2) was being violated when he initiated the traffic stop, *see Houghton*, 364 Wis. 2d 234, ¶30, which requires us to interpret that statute. If LaCourt-Baker had the requisite reasonable suspicion at the time he initiated the stop, and even if that suspicion dissipated once he stopped Braun's vehicle, then the stop was legal, and he was not required to "freeze, do an about-face, and walk

away." *See State v. Smith*, 2018 WI 2, ¶15, 379 Wis. 2d 86, 905 N.W.2d 353. "According to the [United States] Supreme Court, the Fourth Amendment does not compel such an about-face because the mission of any lawful traffic stop includes routine measures like checking a driver's license." *Id.* (citing *Rodriguez v. United States*, 575 U.S. 348, 355 (2015)).

¶16     Thus, we turn to the plain meaning of the statute. WISCONSIN STAT. § 341.15(2) states, in its entirety:

> Registration plates shall be attached firmly and rigidly in a horizontal position and conspicuous place. The plates shall at all times be *maintained in a legible condition and shall be so displayed that they can be readily and distinctly seen and read*. Any peace officer may require the operator of any vehicle on which plates are not properly displayed to display such plates as required by this section.

(Emphasis added.) "Legible" is defined as "capable of being read or deciphered." *Legible*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/legible (last visited Feb. 21, 2025). "Readily" is defined as "without much difficulty." *Readily*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/readily (last visited Feb. 21, 2025). And "distinctly" derives from "distinct," which is defined as "distinguishable to the eye or mind as being discrete … or not the same." *See Distinct*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/distinct (last visited Feb. 21, 2025). These definitions, combined with the context in which these terms are used, clearly demonstrate the statute's meaning and lead to the conclusion that Trooper LaCourt-Baker

reasonably believed that Braun was violating § 341.15(2) when he initiated the traffic stop.[6] *See Kalal*, 271 Wis. 2d 633, ¶46.

¶17 At the time the seizure began—when Trooper LaCourt-Baker was traveling "at a safe" distance from Braun's vehicle—LaCourt-Baker testified to facts supporting a finding that Braun's rear license plate was not "capable of being read or deciphered." It was not displayed in a manner such that it could be seen and read "without much difficulty," due to the peeling reflective material. Further, LaCourt-Baker testified to facts supporting a finding that the rear license plate of Braun's vehicle was not "distinguishable to the eye or mind" because he could not distinguish the plate's letters and numbers from the background of the plate while traveling at a "safe" distance, due to the peeling reflective material.[7]

¶18 Accordingly, even if Braun did not actually violate WIS. STAT. § 341.15(2)—a question on which this court offers no opinion—Trooper

---

[6] To this court's knowledge, no Wisconsin appellate court has, in a published or authored opinion that is permissibly citable, addressed the proper meaning of WIS. STAT. § 341.15(2), particularly the requirement that license plates "shall at all times be maintained in a legible condition and shall be so displayed that they can be readily and distinctly seen and read."

[7] Braun argues that if the initial seizure in this case was constitutional, then it would produce unreasonable results. In support, Braun proposes the following hypothetical: "An Outagamie County Deputy in New London, WI, Deputy A, would not be able to read the license plate of a vehicle at the Outagamie County courthouse. Could Deputy B then stop the vehicle in question due to Deputy A's inability to read the plate?" Braun overlooks the constitutional principle that an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *See State v. Houghton*, 2015 WI 79, ¶21, 364 Wis. 2d 234, 868 N.W.2d 143 (citation omitted). Clearly, Deputy A from the hypothetical would not have reasonable suspicion that a driver several towns over was violating WIS. STAT. § 341.15(2) simply because Deputy A could not physically see the driver. The same would be true of an officer traveling a mile behind a vehicle and not being able to discern the characters on a rear license plate. But the facts in this case show that Trooper LaCourt-Baker was traveling "at a safe" distance from Braun's vehicle and still could not read Braun's rear license plate, due to the reflective material peeling.

LaCourt-Baker had reasonable suspicion, at the moment he initiated the traffic stop, that Braun was violating the statute. The fact that LaCourt-Baker was later able to make out the license plate's characters does not render the stop, or the subsequent interactions between LaCourt-Baker and Braun, unconstitutional, even if that fact rendered Braun in compliance with § 341.15(2). *See Smith*, 379 Wis. 2d 86, ¶¶15, 20.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

10